An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1331
NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

v.                                      Wake County
                                        Nos. 13 CRS 000184; 13 CRS
                                        200086; 13 CRS 200087
CALVIN RICHARDSON


Appeal by defendant from judgments and commitments entered 5 June 2013 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 22 May 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Matthew Tulchin, for the State.*

*Paul F. Herzog, for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Calvin Richardson ("Defendant" or "Forty") appeals from judgments and commitments adjudging him guilty of five counts of robbery with a dangerous weapon, one count of conspiracy to commit robbery with a dangerous weapon, and one count of possession of a firearm by a felon. Defendant contends that the trial court committed plain error in allowing a prior felony

judgment to be published to the jury. Defendant also contends that the trial court erred in allowing cross-examination and testimony concerning the prior convictions contained in that judgment over Defendant's objection. In the alternative, Defendant contends that he received ineffective assistance of counsel at trial. For the following reasons, we find no error.

## I. Factual & Procedural History

From 3 June to 5 June 2013, Defendant was tried in Wake County Superior Court on five counts of robbery with a dangerous weapon, one count of conspiracy to commit robbery with a dangerous weapon, and one count of possession of a firearm by a convicted felon. The evidence presented at trial tended to show the following.

On the evening of 31 December 2012, Mr. Roy Pulley ("Mr. Pulley") hosted a poker game at his apartment in Raleigh. The card players began to arrive at around 7:00 p.m. In attendance were Mr. Craig Washington ("Mr. Washington"), Mr. Charlie Doughty ("Mr. Doughty"), Mr. Carl Perry ("Mr. Perry"), Mr. Reggie Arrington ("Mr. Arrington"), Mr. Steve Hagans ("Mr. Hagans"), and Mr. Maurice Hines ("Mr. Hines"), Mr. Pulley's roommate. These men were longtime friends who gathered periodically to play cards. A man named "Manney" also attended

the card game and brought another man with him, introducing him to the group as "Forty." None of the other card players had met Forty prior to that night, but they did notice his tattoos—a black "40" across his hand and a red star on his neck.

After a few hours of playing cards, Manney and Forty were the first to leave.[1] Both lost money in the game. Shortly after Manney and Forty left, the remaining card players finished their game and prepared to go out to celebrate the new year at a night club. Two of the players, Mr. Washington and Mr. Doughty, decided not to go to the club and left before the others. Mr. Washington walked out of the door of the apartment and before he exited the building, Forty appeared with an AK-47 rifle, pointed it at Mr. Washington, ordered him to be quiet, and demanded money. Another man with a handgun accompanied Forty and participated in the robbery.[2] The men also demanded that Mr. Doughty give them money. Mr. Washington's and Mr. Doughty's mobile phones were taken from them and Mr. Doughty had $290 in cash taken. Mr. Doughty and Mr. Washington fled as Forty and

---

[1] There are discrepancies in the testimony of the card players regarding the timeline of the events that occurred that evening. The estimates of the time of Manney and Forty's departure from the apartment range from 8:40 to 10:40 p.m. on 31 December 2014, with the robberies occurring between 9:40 and 11:40 p.m.

[2] The second gunman's identity was never confirmed. Several of the men described the second gunman as a young, small man with a light complexion and long hair, possibly dreadlocks.

the other gunman went into the apartment. Following the incident, Mr. Washington and Mr. Doughty drove straight home and did not immediately contact the police.

Upon entering the apartment, Forty demanded that everyone put their phones and money on the table and get on the floor. Forty kicked Mr. Pulley in the head and took the money and some of the cell phones before leaving with the other gunman.

The remaining card players also did not contact the police immediately. Instead, Mr. Pulley, Mr. Arrington, Mr. Hagans, and Mr. Hines went to the night club as planned. Mr. Pulley thought Manney had set them up and because he knew Manney, he thought he could convince him to bring the money and phones back. Others testified that they did not call the police because they feared retaliation from the robbers.

Several hours later, Mr. Pulley called the police. Raleigh Police arrived at the apartment at 3:09 a.m. and several of the card players returned to talk to the police. During his interview with Officer C.A. Schmidt of the Raleigh Police Department, Mr. Pulley described Forty as a black male, wearing dark clothes, with a tattoo of the number "40" across his hand, and a tattoo of a red star on the side of his neck.

Agent Stacy Johnson of City-County Bureau of Identification ("CCBI") arrived at 4:13 a.m. and collected fingerprints on a glass used by Forty during the card game. CCBI confirmed the prints matched Defendant's. Detective S.B. Snowden ("Detective Snowden") of the Raleigh Police Department conducted interviews with those present at the apartment. Based on their descriptions of Forty, Detective Snowden identified Forty as Defendant and created a photographic line-up for the witnesses to review. Mr. Pulley and Mr. Perry reviewed the line-up and positively identified Defendant as the individual who had robbed them. At trial, Defendant was called up to the witness stand to show his hands and both sides of his face and neck to the jury. Detective Snowden identified a red star on Defendant's neck underneath his ear and the number "40" on his left hand and testified that these tattoos were consistent with the witnesses' descriptions of the robber. After presenting the foregoing evidence, the State rested its case and Defendant made a motion to dismiss, which was denied.

Thereafter, Defendant offered an alibi defense. Defendant's evidence tended to show that after leaving Mr. Pulley's apartment with Manney, Defendant went to Ms. Tracey Horton's apartment, arriving between 10:00 and 10:35 p.m. From

there, Defendant walked with his fiancée, Ms. Juanita Renee Rand, to downtown Raleigh to watch the acorn drop.

After hearing the foregoing evidence, the jury convicted Defendant on all counts and the trial court sentenced Defendant to consecutive terms of 84 to 113 months, 84 to 113 months, and 33 to 52 months active imprisonment. Defendant gave timely notice of appeal in open court.

## II. Jurisdiction

Defendant's appeal from the superior court's final judgment lies of right to this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b), 15A-1444(a) (2013).

## III. Analysis

Defendant's appeal presents three questions for this Court's review: (1) whether the trial court committed plain error in allowing a prior felony judgment against Defendant to be published to the jury; (2) whether the trial court committed prejudicial error in allowing cross-examination and testimony regarding Defendant's prior convictions over his objection; and (3) whether Defendant received ineffective assistance of counsel at trial when defense counsel neither offered to stipulate to the prior felony conviction nor objected to the prior judgment being published to the jury. We address each in turn.

## A.  Defendant's Plain Error Argument

Defendant's first argument on appeal is that the trial court committed plain error in allowing a prior felony judgment to be published to the jury.  The prior judgment, dated 6 September 2007, establishes that Defendant had been previously convicted of four counts of robbery with a dangerous weapon—the same crime for which Defendant was charged and convicted in this action.  The prior judgment was admitted into evidence as proof of a prior felony conviction, an essential element of another crime with which Defendant had been charged in this action, possession of a firearm by a convicted felon.  *See* N.C. Gen. Stat. § 14-415.1 (2013).  Because Defendant's prior convictions are also for the crime of robbery with a dangerous weapon, and because the State's burden under N.C. Gen. Stat. § 14-415.1 was to establish the existence of a single prior felony conviction, Defendant contends that the probative value of the judgment was substantially outweighed by the danger of unfair prejudice.  *See* N.C. R. Evid. 403 (stating that such evidence "may be excluded" by the trial court).  Defense counsel initially objected to the admission of the judgment into evidence, but did not object when a copy of the judgment was published to the jury.  Accordingly, Defendant seeks plain error review of this issue on appeal.

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4). "Plain error is an error that is 'so fundamental as to result in a miscarriage of justice or denial of a fair trial.'" *State v. Cunningham*, 188 N.C. App. 832, 835, 656 S.E.2d 697, 699 (2008) (quoting *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

However, our Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Moreover, our Supreme Court "has specifically refused to apply the plain error standard of review 'to issues which fall within the realm of the trial court's discretion[.]'" *Cunningham*, 188 N.C. App. at 837, 656

S.E.2d at 700 (quoting *State v. Steen*, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000)).

Here, Defendant's Rule 403 argument, that the probative value of his prior felony judgment was substantially outweighed by the danger of unfair prejudice, concerns a matter within the trial court's discretion. *See State v. Jones*, 176 N.C. App. 678, 687, 627 S.E.2d 265, 271 (2006) ("Whether or not to exclude evidence under Rule 403 of the Rules of Evidence is a matter within the sound discretion of the trial court and its decision will not be disturbed on appeal absent a showing of an abuse of discretion." (quotation marks and citation omitted)).

Accordingly, because evidentiary decisions under Rule 403 are reviewed for abuse of discretion, plain error review is not available. *Cunningham*, 188 N.C. App. at 837, 656 S.E.2d at 700 ("The balancing test of Rule 403 is reviewed by this court for abuse of discretion, and we do not apply plain error to issues which fall within the realm of the trial court's discretion." (quotation marks and citation omitted)). We therefore decline to consider Defendant's first argument.

**B. Defendant's Evidentiary Arguments**

Next, Defendant argues that the trial court committed prejudicial error during the cross-examination and testimony of

Defendant's alibi witnesses, Ms. Tracey Horton and Ms. Juanita Rand. Specifically, Defendant contests the trial court's decision to allow the following exchange between the State's attorney and Ms. Horton:

> [STATE'S ATTORNEY:] Were you aware that the defendant had been convicted of four armed robberies in 2006 and had just gotten out of prison?
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled.
>
> [MS. HORTON]: Yeah.
>
> [STATE'S ATTORNEY:] And you still didn't mind having him in your home?
>
> [MS. HORTON:] No. I mean, no.

Defendant also contests the following exchange between the State's attorney and Ms. Rand:

> [STATE'S ATTORNEY:] You said that you've known this defendant for about two years?
>
> [MS. RAND:] Yes, ma'am.
>
> [STATE'S ATTORNEY:] Did you meet him when he was locked up?
>
> [MS. RAND:] No, ma'am, I didn't. Didn't know him back in 2006.
>
> [STATE'S ATTORNEY:] And you got to know him in 2010?
>
> [MS. RAND:] Uh-hmm.

[STATE'S ATTORNEY:] How long had he been out of jail then?

[MS. RAND:] I think --

[DEFENSE COUNSEL]: Object.

THE COURT: Overruled.

[MS. RAND]: Maybe about five months or four months or so.

[STATE'S ATTORNEY:] And you knew what he was locked up for?

[MS. RAND:] Um-hmm.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

Defendant's brief challenges the trial court's decision to allow the above testimony under Rules of Evidence 401 and 402 (relevancy), Rule 403 (balancing of probative value and the danger of unfair prejudice), and Rule 404(b) (character evidence). However, notwithstanding Defendant's evidentiary objections, we hold that even if the foregoing evidence was admitted in error, Defendant has not demonstrated prejudice.

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice . . . is upon the defendant.

N.C. Gen. Stat. § 15A-1443(a) (2013). When a defendant does not address the effect of the error on his conviction with argument on appeal, it follows that the defendant has failed to show that he was prejudiced by the admission of the evidence. *See State v. Keys*, 87 N.C. App. 349, 356, 361 S.E.2d 286, 290 (1987) ("In the present case defendant argues only that the evidence was irrelevant and never addresses the effect of the error on her conviction. Therefore, we find defendant has failed to show she was prejudiced by the admission of the evidence and overrule this assignment of error.").

Here, Defendant has not met his burden to show how he was prejudiced. In his brief, Defendant cites to several cases to show that the trial court erred in its evidentiary decisions, but has not shown how the outcome in this case would have been different had the alleged errors not been committed. Accordingly, Defendant's second argument on appeal is overruled.

**C. Defendant's Ineffective Assistance of Counsel Argument**

Finally, Defendant contends that we should find on direct review that Defendant received ineffective assistance of counsel at trial. Specifically, Defendant contends that his trial counsel erred by failing to offer to stipulate that Defendant had been convicted of a felony and by failing to object to the

publication of Defendant's prior judgment to the jury. Because of these alleged deficiencies in defense counsel's performance, Defendant contends he was "irreparably prejudiced."

To prevail on an ineffective assistance of counsel claim,

> a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and quotation marks omitted), *cert. denied*, 549 U.S. 867 (2006).

Furthermore, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland v. Washington*, 466 U.S. 668, 697 (1984). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

Here, Defendant was convicted of possession of a firearm by a convicted felon under N.C. Gen. Stat. § 14-415.1. Pursuant to that statute, "records of prior convictions . . . shall be admissible in evidence for the purpose of proving a violation of this section." *Id.* Under the statute, the State was required to prove that Defendant was previously convicted of a felony. While the record in this case is clear that defense counsel did not stipulate that Defendant had been convicted of a felony, the record does not reveal whether Defendant was consulted about whether he should stipulate to the same, or whether he wanted the State to be held to its burden to prove the essential element of a prior felony conviction. We also do not know whether Defendant's trial counsel and the State discussed a stipulation before trial or off the record. However, we do not need to know these facts to rule on Defendant's ineffective assistance of counsel claim. Even assuming, *arguendo*, that defense counsel should have suggested that the parties stipulate to Defendant's prior felony conviction, and, consistent with Defendant's second argument, that defense counsel should have objected to the prior judgment being published to the jury, doing so would not have prejudiced Defendant.

The record indicates that there was overwhelming evidence to support the jury's verdict. Two eyewitnesses identified Defendant in a photographic lineup as the robber. At trial, all five eyewitnesses identified Defendant as the man who robbed them. They testified to his distinguishing tattoos, which were later pointed out on Defendant's hand and neck in front of the jury. Defendant's fingerprints were also found on a drinking glass at the scene of the crime. Thus, Defendant's alibi defense was, at best, somewhat imperfect. Furthermore, Defendant received a limiting instruction from the trial court to the effect that the jury should only consider Defendant's prior convictions for the purpose of deciding the charge of possession of a firearm by a convicted felon.

Thus, in light of the overwhelming evidence against him, and measures taken by the trial court to mitigate any possible prejudice, Defendant has failed to show a reasonable probability that, but for his trial counsel's alleged unprofessional errors, the result of the proceeding would have been different. Accordingly, we overrule Defendant's ineffective assistance claim.

## IV. Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judges ERVIN and DAVIS concur.

Report per rule 30(e).