HUNTER, JR., Robert N., Judge.
Jermaine Antwan Tart ("Defendant") appeals following jury verdicts convicting him of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. Following the verdicts, the trial court imposed a sentence of 207 to 261 months imprisonment for attempted first-degree murder. The court imposed a sentence of 96 to 128 months imprisonment for the assault conviction, to run concurrently with the attempted murder conviction. On appeal, Defendant contends the indictment for attempted first-degree murder was insufficient to confer subject-matter jurisdiction on the trial court. Defendant also contends the trial court erred in failing to intervene during the prosecutor's allegedly improper closing arguments. Due to a fatal defect in the indictment we vacate Defendant's attempted first-degree murder conviction, and find no error for the assault conviction.
I. Factual and Procedural Background
A Forsyth County Grand Jury indicted Defendant for assault with a deadly weapon with intent to kill inflicting serious injury on 7 April 2014, and for attempted first-degree murder on 27 October 2014.[1] On 22 August 2016, the Forsyth County Superior Court called Defendant's case for trial. The evidence admitted at trial tended to show the following.
Richard Cassidy volunteered at the homeless shelter where Defendant resided. During the week prior to the incident at issue, Cassidy noticed Defendant acting "odd." Defendant started to wear food service gloves, spent an unusual amount of time riffling through his bag of belongings, and he informed Cassidy someone had stolen his medication. On 2 March 2014, Cassidy led a group of residents to the church overflow shelter. Defendant walked beside Cassidy and as they walked Defendant made crude comments about another shelter volunteer. Cassidy asked Defendant to change the conversation, and then Defendant spoke incoherently. Cassidy could not understand Defendant's statements which ranged in topic from snow shoes, to snow houses, and his daughter or his sister.
As the group crossed the street, Cassidy realized Defendant was no longer walking beside him and he then noticed a knife over his shoulder. Defendant hit Cassidy, stabbed him in the head, and knocked him to the ground. Cassidy then recalled Defendant was on top of him saying "I am going kill you." Defendant stabbed Cassidy in the head, neck, shoulder, and in the back, and attempted to gouge his eyes out. Then, as a police officer arrived, Defendant stopped his assault, placed Cassidy's hand on the knife, and stated "[h]e's got a knife."
After the incident, Officer Gregory Martin interviewed Defendant. Defendant explained he attacked Cassidy because Cassidy had reprimanded him for making too much noise, Cassidy was trying to "put him out of the place," and most importantly, Cassidy had allowed two individuals to steal Defendant's personal belongings. Additionally, Defendant stated Cassidy often spoke about how much money he had, spread all over the world. Defendant also believed Cassidy "had shot him in the head when he was eight years old and watched him die in eight seconds." Defendant indicated Cassidy treated him as if he were irrelevant. So, Defendant stated, "I stabbed him up" and again, he stated "I stabbed him as many times as I could." Defendant said he had two knives, and he believed Cassidy also had a knife. At least twice, Defendant stated he did not intend to kill Cassidy.
Defendant called Dr. Christine Herfkens, an expert in neuropsychology. Herfkens testified Defendant "had a long history of severe and persistent mental illness" including schizoaffective disorder as well as either dependence on marijuana and alcohol, or substance abuse disorder. Defendant was also diagnosed with Antisocial Personality Disorder, which was formerly referred to as sociopathy, one of the hallmark behaviors of which is manipulation. His health records also indicated he had homicidal ideation, meaning he had the desire to kill another person. Defendant had been admitted to state hospitals approximately twelve times since 2002, and each time he had a homicidal ideation.
Defendant told Herfkens, Cassidy "had put a hit on him" and "people were coming to kill him." He also stated Cassidy had previously shot him when he was eight years old, and had been bragging about how he had killed Defendant.
The defense rested and the court allowed the State to re-open its case-in-chief and call Dr. Richard Blanks as an expert in the field of forensic psychiatry. Dr. Blanks testified an individual can have specific intent and a delusion at the same time. He noted Defendant demonstrated "the stigma of Antisocial Personality Disorder" which was formerly known as sociopathy. He discussed Defendant's medical records, including several hospitalizations, one of which occurred when he was eighteen years old, shortly after he was diagnosed with a bipolar disorder. Defendant had been assaulted by two individuals and was hospitalized after he demonstrated homicidal ideation towards the two individuals.
Additionally, Dr. Blanks stated Defendant's belief that Cassidy allowed someone to steal his medication, along with his belief Cassidy put him out of the shelter, are examples of Defendant's non-delusional reasons for being angry with Cassidy, even if Defendant's beliefs were inaccurate. Dr. Blanks testified "another source of conflict between [Defendant] and [Cassidy]" concerned Defendant's belief that Cassidy would not assist him in obtaining a YMCA membership. Dr. Blanks testified these beliefs demonstrate non-delusional reasons Defendant was angry with Cassidy; and Defendant's statement to Cassidy "I am going to kill you" evidences Defendant's specific intent to kill.
Defendant moved to dismiss both charges arguing he had demonstrated diminished capacity and the absence of the specific intent to kill. The court denied both motions. The jury found Defendant guilty of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court sentenced Defendant to concurrent sentences totaling 207 to 261 months imprisonment. Defendant gave timely oral notice of appeal to this Court.
II. Analysis
On appeal Defendant contends the trial court lacked jurisdiction on the charge of attempted first-degree murder because the indictment was fatally defective. Defendant also contends the trial court failed to intervene during the prosecution's allegedly improper closing argument. We address each argument in turn.
Defendant first argues the trial court lacked jurisdiction on the charge of attempted first-degree murder because the short-form indictment did not contain the requisite language. We agree the indictment was fatally flawed and the trial court lacked jurisdiction.
"[W]e review the sufficiency of an indictment de novo." State v. McKoy, 196 N.C. App. 650, 652, 675 S.E.2d 406, 409 (2009). "It is well settled that 'a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony.' " State v. Abraham, 338 N.C. 315, 339, 451 S.E.2d 131, 143 (1994) (citation omitted.). The North Carolina Constitution provides "[e]xcept in misdemeanor cases initiated in the District Court Division, no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment." N.C. Const. art. I, § 22. N.C. Gen. Stat. § 15-144 authorizes the use of a short form indictment for murder and manslaughter. This statute provides a short-form indictment for murder is sufficient if it alleges "the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed)." N.C. Gen. Stat. § 15-144 (2015). And a short-form indictment for manslaughter is sufficient if it alleges "the accused feloniously and willfully did kill and slay (naming the person killed)." Id.
The indictment in question fails to comply with the short form indictment authorized by N.G. Gen. Stat. § 15-144. It states the following: "[t]he jurors for the State upon their oath present that on or about [2 March 2014 in Forsyth County] the defendant named above unlawfully, willfully and feloniously did attempt to kill and slay Richard Cassidy with malice aforethought." (emphasis added). It does not allege Defendant attempted to "kill and murder"-the requisite language for murder. Instead it contains the phrase "kill and slay"-the requisite language for manslaughter. The terms "murder" and "slay" are not interchangeable. Thus, this indictment is insufficient to charge attempted murder and the trial court lacked jurisdiction to enter judgment on this charge.
Defendant next contends the trial court erred in failing to intervene ex mero motu during the prosecution's closing arguments. After reviewing the prosecutor's statements, we conclude while these statements may be objectionable if Defendant had objected at trial, they were not so grossly improper as to warrant a new trial.
During closing arguments the prosecutor made the following statements:
Members of [the] jury, [Defendant's mental health history] is ripe with examples of violence, and homicidal ideations, the desire and intent to kill other people. The mental illness, if he did in fact suffer one, it didn't prevent him from forming the specific intent to kill. He had the specific intent to kill many people, over a 20-year period of time. That mental illness continued to come back up through all of these diagnoses, through all of these hospitalizations.
Antisocial Personality Disorder, a disorder characterized by violence. By deceit. By manipulation. By an inability to conform your conduct to the confines of the law. That's all that Dr. Blanks told you. You know what a synonym is for someone who suffers from Antisocial Personality Disorder ? A sociopath.
So the Defendant is a violent, manipulative, homicidal sociopath. That's his diagnosis. Based on that. They want you to just give him a slap on the wrist for this. ...
....
... You can protect our communities and ensure that a homicidal, manipulative, sociopath, is not unleashed, yet again, onto our streets.
Defendant claims the prosecutor's comments constitute improper name-calling intended "to exploit commonly held misperceptions and fears" and to appeal to the passions and prejudices of the jury. Defendant further claims the statement Defendant "had the specific intent to kill many people, over a 20-year period of time" has no basis in the record, and the statement Defendant would receive a "slap on the wrist" and be "unleashed, yet again" was improper.
Defendant did not object to these arguments at trial, therefore, our standard of review is whether the argument was "so grossly improper that the trial court erred in failing to intervene ex mero motu." State v. Barden, 356 N.C. 316, 358, 572 S.E.2d 108, 135 (2002), cert. denied, 538 U.S. 1040, 155 L.Ed. 2d 1074 (2003). In other words, this Court must determine whether "the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made." State v. Jones, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002).
"During closing arguments, attorneys are given wide latitude to pursue their case." State v. Prevatte, 356 N.C. 178, 237, 570 S.E.2d 440, 472 (2002). However, in State v. Jones, the North Carolina Supreme Court held a closing argument must: "(1) be devoid of counsel's personal opinion; (2) avoid name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial." Jones at 135, 558 S.E.2d at 108.
We conclude, while the statements at issue may be improper and objectionable had Defendant raised such an objection at trial, they are not so grossly improper as to prejudice Defendant. While we do not approve of the vocabulary used, each term was referenced during testimony and has a basis in the record. One of the medical experts testified regarding Defendant's violent tendencies, and Defendant referred to himself as violent. Also, the medical experts referenced Defendant's manipulative tendencies, and his history of homicidal ideations. And while the term "sociopath" is no longer the appropriate terminology to use, Defendant's medical expert testified it is a synonym for Defendant's condition.
Likewise, the prosecutor's statement Defendant would receive a "slap on the wrist" and be "unleashed, yet again, onto our streets" is not so grossly improper. We have upheld other similar "hyperbolic expression[s] of the State's position that a not guilty verdict, in light of the evidence of guilt, would be an injustice." State v. Pittman, 332 N.C. 244, 262, 420 S.E.2d 437, 447 (1992) (holding the prosecutor's statement indicating if the defendant was not convicted "justice in Halifax County will be dead" was not improper); see also State v. Brown, 177 N.C. App. 177, 189-90, 628 S.E.2d 787, 794-95 (2006) (holding the prosecutor's statement "that convicting [the] defendants of the lesser-included offense would be 'a slap on the wrist' " did not unfairly prejudice the defendant when there was sufficient evidence to support the charge). We hold while the statements at issue may be improper, they are not so grossly improper that the trial court erred in failing to intervene ex mero motu.
Even assuming arguendo the trial court erred in failing to intervene, Defendant also must demonstrate he was prejudiced by the error by showing "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial ...." N.C. Gen. Stat. § 15A-1443(a) (2015). The evidence demonstrating Defendant stabbed Cassidy multiple times was undisputed and there was sufficient evidence to support Defendant's conviction of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant has failed to demonstrate he was prejudiced.
Finally, Defendant contends the trial court erred in entering a judgment which failed to give him credit for time served. The trial court ordered Defendant to receive credit for the time he served awaiting trial, but the judgements do not reflect such credit. Our Supreme Court has stated "[t]his is, ... a matter for administrative action, as provided by G.S. 15-196.4, rather than a subject to be considered on ... appeal." State v. Mason, 295 N.C. 584, 594, 248 S.E.2d 241, 248 (1978).
III. Conclusion
For the foregoing reasons we vacate in part, and find no error in part. In vacating Defendant's conviction for attempted first-degree murder we need not remand for resentencing, because the trial court imposed a separate sentence of 96 to 128 months imprisonment for the assault with a deadly weapon with intent to kill inflicting serious injury conviction which remains undisturbed.
VACATE IN PART; NO ERROR IN PART.
Report per Rule 30(e).
Chief Judge MCGEE and Judge MURPHY concur.

The State offered Defendant a plea and promise not to indict for first-degree murder.