MORGAN, Justice.
**74 This criminal appeal presents two issues for the Court to resolve: whether a short-form indictment sufficiently charged attempted first-degree murder when the wording of the indictment did not precisely duplicate the language of the relevant statute and whether a prosecutor's remarks during closing argument were so grossly improper that the trial court should have intervened ex mero motu . While we agree with the Court of Appeals that the State's characterizations during its closing argument do not entitle defendant to a new trial, we reject the lower appellate court's determination regarding the short-form indictment and hold that the indictment was sufficient to vest the trial court with subject-matter jurisdiction to try defendant for attempted first-degree murder. Accordingly, we affirm in part and reverse in part the decision of the Court of Appeals.
Factual and Procedural Background
In late February 2014, defendant Jermaine Antwan Tart was residing at a homeless shelter in Winston-Salem where the victim in this case, Richard Cassidy, was a volunteer worker. On 2 March 2014, Cassidy was leading a group of shelter residents, including defendant, as they walked to an overflow location of the shelter. During the walk to this area, defendant made several inappropriate comments and began to speak incoherently. Defendant suddenly began to assault Cassidy from behind, stabbing Cassidy in the head and knocking him to the ground. Defendant then got on top of Cassidy and continued to attack him, striking Cassidy's head, neck, shoulder, and back with a knife. Even after another shelter resident attempted to intervene in order to try to stop the attack, defendant persisted in his assault of Cassidy. A law enforcement officer arrived on the scene and was able to stop defendant's attack on Cassidy. Although the injuries that Cassidy sustained were serious and life-threatening, he survived the assault. Defendant subsequently stated during interviews with law enforcement officers and mental health professionals that he was upset with Cassidy because Cassidy had allowed others to steal from him, had disrespected defendant, and had shot defendant when defendant was a child.
Defendant was charged with the offenses of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. At trial, there was no dispute that defendant had stabbed Cassidy. The sole contested question concerned defendant's mens rea, namely, whether defendant had the specific intent to attempt to commit first-degree murder.
**75 The State introduced testimony from Richard Blanks, M.D., an expert in the field of forensic psychiatry, who opined that an individual can have a specific intent and a delusion at the same time. Also in his testimony, Dr. Blanks offered defendant's belief that Cassidy had allowed others to steal from defendant as an example of defendant's non-delusional reasons for being angry with Cassidy, even if defendant's beliefs were actually inaccurate. Dr. Blanks testified that these beliefs constituted identifiable non-delusional reasons that could cause defendant to be angry with Cassidy and would further evidence defendant's specific intent to kill Cassidy.
*839 Dr. Christine Herfkens, a psychologist and expert in forensic and clinical neuropsychology who was a witness for the defense, testified that defendant had a long history of mental illness, including schizoaffective disorder and antisocial personality disorder, which is a disorder formerly known as sociopathy. Defendant's medical records indicated that he had been admitted to state hospitals at least twelve times between 2002 and 2014, each time exhibiting homicidal ideation, which Herfkens defined as the desire to kill another person. In addition, defendant was dependent on both alcohol and marijuana.
At the close of the State's evidence and again at the close of all of the evidence, defendant moved to dismiss both charges against him, arguing that he had demonstrated diminished capacity and the absence of the specific intent to kill. The trial court denied these motions. The jury subsequently found defendant guilty of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court sentenced defendant to concurrent terms totaling 207 to 261 months of imprisonment.
Defendant appealed to the Court of Appeals and raised two arguments, neither of which was presented to the trial court. First, defendant challenged the indictment that purported to charge him with attempted first-degree murder, claiming that it was insufficient to confer subject-matter jurisdiction on the trial court. Specifically, defendant noted that the short-form indictment utilized for the attempted first-degree murder charge included one word from the statutorily approved language for charging manslaughter along with the prescribed wording for a murder offense. Second, defendant contended that certain remarks in the prosecutor's closing argument at trial were so grossly improper that the trial court committed reversible error in failing to intervene ex mero motu . In a unanimous, unpublished opinion issued on 5 December 2017, the North Carolina Court of Appeals agreed with defendant's indictment **76 argument and vacated his attempted first-degree murder conviction, but found no error in the trial court's silence during the State's closing argument and therefore upheld the assault conviction. See State v. Tart , --- N.C. App. ----, 808 S.E.2d 178, 2017 WL 6002771 (2017) (unpublished).
On 14 December 2017, the State filed a petition for writ of supersedeas and application for temporary stay in this Court. The following day, this Court stayed the decision of the Court of Appeals. On 11 January 2018, the State filed a petition seeking discretionary review of the Court of Appeals' decision regarding sufficiency of the indictment for attempted first-degree murder, and on 22 January, defendant filed a conditional petition for discretionary review of the Court of Appeals' resolution of the closing argument issue. This Court allowed both petitions for discretionary review on 9 May 2018.
Analysis
I. Facial Sufficiency of the Short-form Attempted First-degree Murder Indictment
North Carolina General Statutes section 15-144 sets out the appropriate phrasing which can be utilized in indictments for the criminal offenses of murder and manslaughter. The statute reads in pertinent part:
[I]t is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed), and concluding as is now required by law; and it is sufficient in describing manslaughter to allege that the accused feloniously and willfully did kill and slay (naming the person killed), and concluding as aforesaid ....
N.C.G.S. § 15-144 (2017). The indictment in the case at bar, in charging defendant with the criminal offense of attempted first-degree murder, states in pertinent part: "the defendant [Jermaine Antwan Tart] unlawfully, willfully and feloniously did attempt to kill and slay Richard Cassidy with malice aforethought." (Emphasis added).
A comparison of the statutory requirements to sufficiently charge a person in an indictment for an offense pertaining to murder under N.C.G.S. § 15-144 and the challenged indictment in the instant case offers two notable observations: (1) the phrase "malice aforethought" appears in both the statutory requirements and the current indictment, and (2) the phrase "kill and murder,"
*840 which is statutorily associated with an offense pertaining to murder in an indictment, is replaced in the current indictment with the phrase "kill and slay," which is statutorily **77 associated with an offense pertaining to manslaughter in an indictment. Therefore, the indictment that this Court evaluates for its sufficiency to charge defendant with the offense of attempted first-degree murder contains language associated not only with an offense pertaining to murder-namely, "malice aforethought"-but also with an offense pertaining to manslaughter-namely, "kill and slay"-as designated in N.C.G.S. § 15-144.
The State argues that the Court of Appeals erred by employing a new "interchangeability" analysis with respect to the construction of indictments that do not adhere verbatim to their authorizing statutes. In considering the indictment charging defendant with attempted first-degree murder in the present case, the Court of Appeals concluded:
The indictment in question fails to comply with the short form indictment authorized by N.C.G.S. § 15-144. It states the following: "[t]he jurors for the State upon their oath present that on or about [the dates of offense shown and in the county named above] the defendant named above unlawfully, willfully and feloniously did attempt to kill and slay Richard Cassidy with malice aforethought." (emphasis added). It does not allege Defendant attempted to "kill and murder"-the requisite language for murder. Instead it contains the phrase "kill and slay"-the requisite language for manslaughter. The terms "murder" and "slay" are not interchangeable. Thus, this indictment is insufficient to charge attempted murder and the trial court lacked jurisdiction to enter judgment on this charge.
Tart , 2017 WL 6002771, at *3 (second set of brackets in original). We agree with our colleagues at the lower appellate court that "[t]he terms 'murder' and 'slay' are not interchangeable," id. ; however, the usage of the word "slay" in place of the word "murder" in the indictment here is a distinction without a difference because the indictment against defendant also charged that the killing was done "with malice aforethought." Id. Under such circumstances as those present in the case at bar, the words that appear in the short-form indictment are sufficient to charge attempted first-degree murder.
The plain language of N.C.G.S. § 15-144, coupled with consideration of the constitutional purpose of indictments, dictates our determination that the indictment here effectively withstands challenge. An indictment is "a written accusation of a crime drawn up by the public prosecuting attorney and submitted to the grand jury, and by them found and presented on oath or affirmation as a true bill."
**78 State v. Thomas , 236 N.C. 454, 457, 73 S.E.2d 283, 285 (1952) (citations omitted). "Except in misdemeanor cases initiated in the District Court Division, no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment." N.C. Const. art. I, § 22. This constitutional provision is intended
(1) [to provide] such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial, and (4) to enable the court, on conviction or plea of nolo contendere or guilty[,] to pronounce sentence according to the rights of the case.
State v. Greer , 238 N.C. 325, 327, 77 S.E.2d 917, 919 (1953) (citations omitted).
N.C.G.S. § 15-144 is clear that a short-form indictment for murder is sufficient if it alleges "the accused person feloniously, willfully, and of his malice aforethought , did kill and murder (naming the person killed)," while a short-form indictment for manslaughter is sufficient if it alleges "the accused feloniously and willfully did kill and slay (naming the person killed)." N.C.G.S. § 15-144 (emphases added). An examination of this statutory language reveals that there are two express differences in the terminology utilized by the General Assembly to establish short-form indictments for the offenses of murder and manslaughter that are critical to the case at bar: (1) the reference in manslaughter offenses that the named defendant did slay an individual, compared with the reference in murder offenses that the defendant *841 did "murder" an individual; and (2) the mandated inclusion in an indictment for a murder offense of the essential element of "malice aforethought," while the allegation of "malice aforethought" is not required to charge manslaughter. The critical and dispositive difference between short-form indictments for murder offenses and manslaughter offenses is the substantive allegation of the element of "malice aforethought" in murder offense short-form indictments, rather than the employment of the synonyms "slay" in manslaughter offense short-form indictments or "murder" in murder offense short-form indictments upon which the Court of Appeals chose to focus.
Black's Law Dictionary defines the noun "murder" as "[t]he killing of a human being with malice aforethought,"[1] murder , Black's Law **79 Dictionary (10th ed. 2014) [hereinafter Black's ], and defines the verb "slay" as "[t]o kill (a person), esp. in battle," slay , Black's . It is evident from the plain legal definitions of the words "murder" and "slay" that there is no meaningful distinction between the two terms for the purpose of ascertaining the sufficiency of the description of the attempted first-degree murder offense as alleged in the current case that defendant had attempted to kill a human being or person named Richard Cassidy. While it may have been a better practice for the prosecution here to replicate the specific language of N.C.G.S. § 15-144 in alleging defendant's commission of the offense of attempted first-degree murder, the prosecution's failure to do so did not render the indictment fatally defective. The prosecution's proper and necessary inclusion of the legal element "malice aforethought" in the present indictment's charge of attempted first-degree murder substantively and constitutionally distinguishes this charge from an alleged manslaughter offense-despite the usage of the term "slay" instead of the term "murder"-because, as required by Greer in its construction of the pertinent provisions of the Constitution of North Carolina, the short-form indictment under review provided such certainty in the statement of the accusation as would identify the offense with which defendant was charged, protected defendant from being put in double jeopardy for the same alleged offense, enabled defendant to prepare for trial, and enabled the trial court to pronounce a sentence upon defendant's conviction of attempted first-degree murder. Greer , 238 N.C. at 327, 77 S.E.2d at 919. Therefore, the short-form indictment was sufficient to vest the trial court with subject-matter jurisdiction over this charge.
We hold that the use of the term "slay" instead of "murder" in an indictment that also includes an allegation of "malice aforethought" complies with the relevant constitutional and statutory requirements for valid murder offense indictments and serves its functional purposes with regard to both the defendant and the court. See id. at 327, 77 S.E.2d at 919 ; see also State v. Rankin , --- N.C. ----, ----, 821 S.E.2d 787, 790-91 (2018) ("The law disfavors application of rigid and technical rules to indictments; so long as an indictment adequately expresses the charge against the defendant, it will not be quashed."). Accordingly, we reverse the Court of Appeals' decision on this issue and reinstate the judgment entered upon defendant's conviction for attempted first-degree murder.
II. Remarks during the State's Closing Argument
Defendant contends that the Court of Appeals erred in failing to find that the trial court should have intervened ex mero motu during the State's closing argument. Specifically, defendant draws our attention **80 to comments made to the jury by the prosecutor that defendant "had the specific intent to kill many people, over a 20-year period of time," and that if the jury did not convict, defendant would be "unleashed, yet again, onto our streets." Defendant also argues that there was gross impropriety in the State's claims to the jury that defendant's potentially delusional beliefs were a valid foundation upon which the jury could find that defendant possessed the requisite specific intent for the commission of the offense of attempted first-degree murder. Defendant asserts that these *842 statements were so grossly improper and prejudicial that he is entitled to a new trial. After careful consideration, we cannot fault the trial court in declining to interject itself into the State's closing argument when defendant himself chose to refrain from objecting to these remarks at trial. Accordingly, we affirm the Court of Appeals on this issue.
This Court noted in State v. Jones , 355 N.C. 117, 127, 558 S.E.2d 97, 103 (2002) :
A lawyer's function during closing argument is to provide the jury with a summation of the evidence, Herring v. New York , 422 U.S. 853, 861-62 [95 S.Ct. 2550, 2555], 45 L.Ed.2d 593, 599-600 (1975), which in turn "serves to sharpen and clarify the issues for resolution by the trier of fact," id. at 862 [95 S.Ct. at 2555], 45 L.Ed.2d at 600, and should be limited to relevant legal issues. See State v. Allen , 353 N.C. 504, 508-11, 546 S.E.2d 372, 374-76 (2001).
Regarding closing arguments made to the jury during criminal trials, the North Carolina General Statutes provide that "an attorney may not: (1) become abusive, (2) express his personal belief as to the truth or falsity of the evidence, (3) express his personal belief as to which party should prevail, or (4) make arguments premised on matters outside the record." Jones , 355 N.C. at 127, 558 S.E.2d at 104 (discussing N.C.G.S. § 15A-1230(a) (1999) ). Through our precedent, this Court has elaborated on the statutory provisions governing closing arguments and emphasized that closing arguments "must: (1) be devoid of counsel's personal opinion; (2) avoid name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passions or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial." Id. at 135, 558 S.E.2d at 108.
Nonetheless,
[w]here a defendant fails to object to the closing arguments at trial, defendant must establish that the remarks **81 were so grossly improper that the trial court abused its discretion by failing to intervene ex mero motu . "To establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." State v. Davis , 349 N.C. 1, 23, 506 S.E.2d 455, 467 (1998), cert. denied , 526 U.S. 1161 [119 S.Ct. 2053], 144 L.Ed.2d 219 (1999). " '[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting ex mero motu an argument which defense counsel apparently did not believe was prejudicial when he heard it.' " State v. Hipps , 348 N.C. 377, 411, 501 S.E.2d 625, 645 (1998) (quoting State v. Johnson , 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979) ), cert. denied , 525 U.S. 1180 [119 S.Ct. 1119], 143 L.Ed. 2d 114 (1999).
State v. Mitchell , 353 N.C. 309, 324, 543 S.E.2d 830, 839, cert. denied , 534 U.S. 1000, 122 S.Ct. 475, 151 L.Ed.2d 389 (2001) (second alteration in original); see also State v. Anthony , 354 N.C. 372, 427, 555 S.E.2d 557, 592 (2001) ("[O]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting ex mero motu an argument that defense counsel apparently did not believe was prejudicial when originally spoken." (quoting State v. Richardson , 342 N.C. 772, 786, 467 S.E.2d 685, 693, cert. denied , 519 U.S. 890, 117 S.Ct. 229, 136 L.Ed.2d 160 (1996) )), cert. denied , 536 U.S. 930, 122 S.Ct. 2605, 153 L.Ed.2d 791 (2002). While these cited cases and their progeny do not in any way diminish the professional, ethical expectations for prosecutors in making their final arguments to the fact-finder, they serve to establish the standards and considerations by which the actions or inactions of the neutral trial judge must be measured during the parties' closing arguments in a criminal trial, especially when the party challenging the propriety of the opposing party's closing argument in such a criminal trial is silent during the rendition of the disputed remarks, but on appeal challenges the trial judge's simultaneous silence. In circumstances in which a defendant in his or her role as an obvious interested party in a criminal trial fails to object to the other party's closing statement at trial, yet assigns as error the detached trial judge's routine taciturnity during closing arguments in the absence of any objection, this Court has consistently viewed the appealing party's burden to show prejudice and reversible error as a *843 heavy one. See Anthony , 354 N.C. at 427, 555 S.E.2d at 592. **82 Even when a reviewing court determines that a trial court erred in failing to intervene ex mero motu , a new trial will be granted only if "the remarks were of such a magnitude that their inclusion prejudiced defendant, and thus should have been excluded by the trial court." Jones , 355 N.C. at 131, 558 S.E.2d at 106 (citations omitted). "[T]o warrant a new trial, the prosecutor's remarks must have perverted or contaminated the trial such that they rendered the proceedings fundamentally unfair." State v. Mann , 355 N.C. 294, 307-08, 560 S.E.2d 776, 785 (citation omitted), cert. denied , 537 U.S. 1005, 123 S.Ct. 495, 154 L.Ed.2d 403 (2002). In assessing whether this level of prejudice has been shown, the challenged statements must be considered "in context and in light of the overall factual circumstances to which they refer." State v. Alston , 341 N.C. 198, 239, 461 S.E.2d 687, 709 (1995) (citing State v. Pinch , 306 N.C. 1, 24, 292 S.E.2d 203, 221, cert. denied , 459 U.S. 1056, 103 S.Ct. 474, 74 L.Ed.2d 622 (1982), and overruled on other grounds by , inter alia , State v. Benson , 323 N.C. 318, 372 S.E.2d 517 (1988) ), cert. denied , 516 U.S. 1148, 116 S.Ct. 1021, 134 L.Ed.2d 100 (1996).). Thus, "[o]nly when it finds both an improper argument and prejudice will this Court conclude that the error merits appropriate relief." State v. Huey , 370 N.C. 174, 179, 804 S.E.2d 464, 469 (2017) (emphasis added) (citing Jones , 355 N.C. at 134-35, 558 S.E.2d at 108-09 ).
In applying the analysis enunciated in the cited case law to determine whether or not there was any impropriety in the prosecutor's closing argument, defendant emphasizes the "substantial evidence of [defendant's] mental illness and inability to form specific intent" and contends that the challenged remarks by the prosecution "lacked a reasonable basis in the record and appealed to the passions and prejudices of the jury." Before this Court,[2] defendant identifies three portions of the State's closing argument as grossly improper.
In the first instance, the prosecutor told the jury that defendant's mental health history
is ripe with examples of violence, and homicidal ideations, the desire and intent to kill other people. The mental illness, if he did in fact suffer one, it didn't prevent him from forming the specific intent to kill. He had the specific intent to kill many people, over a 20-year period of time .
**83 That mental illness continued to come back up through all of these diagnoses, through all of these hospitalizations.
(Emphasis added).
Defendant characterizes the Court of Appeals' review of these comments, in which it opined that "each [challenged] term was referenced during testimony and has a basis in the record," Tart , 2017 WL 6002771, at 4, as "wrongly conflat[ing]" the legal concept of "specific intent" with the psychiatric concept of "homicidal ideation." The only definition of "homicidal ideation" given to the jury at trial came from Herfkens, who testified as an expert on defendant's behalf about defendant's past mental health issues and who described "homicidal ideation" as "the intent, the desire to kill another person." She then testified that defendant's "homicidal ideation" appeared "throughout his mental health records." Dr. Richard Blanks, an expert in forensic psychiatry who appeared on behalf of the State, testified that defendant's "[t]houghts and desires to kill other people" were a "consistent theme" in his hospital admission records. In addition, defendant told Cassidy during the stabbing that defendant was "going to kill" Cassidy. The mens rea element of specific intent to kill has been defined in our legal system as being existent when a "defendant intended for his action to result in the victim's death." State v. Phillips , 365 N.C. 103, 141, 711 S.E.2d 122, 149 (2011) ( State v. Keel , 333 N.C. 52, 58, 423 S.E.2d 458, 462 (1992) ), cert. denied , 565 U.S. 1204, 132 S.Ct. 1541, 182 L.Ed. 2d 176 (2012). Further, the prosecutor's summation comments must be considered in context and in light of the overall factual circumstances to *844 which they refer, as required by Alston , which here equated to the State's rebuttal of defendant's staunchest position at trial that his mental illness precluded him from forming the specific intent to kill Cassidy as required to sustain a conviction for attempted first-degree murder or assault with a deadly weapon with intent to kill or both. Indeed, the prosecutor framed these disputed statements during the State's closing argument in a manner that served to sharpen and clarify the issues for the jury, as characterized in Herring , by explaining that any mental illness defendant had "didn't prevent him from forming the specific intent to kill." In this context and in light of the evidence adduced at trial that included references adopted by the prosecutor that were gleaned from expert testimony, the first portion of the State's closing argument challenged by defendant did not constitute gross impropriety so as to require the trial court to intervene ex mero motu . This passage from the prosecutor's closing statement was premised on matters contained in the record in compliance with Jones and was consistent with the specific guidelines for closing arguments as set out by the General Assembly in N.C.G.S. § 15A-1230(a) and reiterated in Jones . **84 In the second excerpt from the State's closing argument denounced by defendant, the prosecutor argued:
You are, in a very real way, the conscience of our community. You are the ones who are standing on the wall. You're the ones who are standing up for [the victim, Cassidy], who, for the last 10 years of his life, has stood up for the poor, for the marginalized, for the forgotten, and for the hopeless.
You can stand up for him. You can protect our communities and ensure that a homicidal, manipulative, sociopath, is not unleashed, yet again, onto our streets.
... You can protect our communities and ensure that a homicidal, manipulative, sociopath, is not unleashed, yet again, onto our streets .
I'm not asking you to do anything other than follow the law.
(Emphasis added). Defendant contends that the reference to being "unleashed" was inflammatory and prejudicial. In addressing this statement, the Court of Appeals noted that appellate courts "have upheld other similar 'hyperbolic expression[s] of the State's position that a not guilty verdict, in light of the evidence of guilt, would be an injustice.' " Tart , 2017 WL 6002771, at *4 (alteration in original) (first quoting State v. Pittman , 332 N.C. 244, 262, 420 S.E.2d 437, 447 (1992) (holding, as described by the Court of Appeals, Tart , 2017 WL 6002771, at *4, that "the prosecutor's statement indicating if the defendant was not convicted 'justice in Halifax County will be dead' was not improper"); and then citing State v. Brown , 177 N.C. App. 177, 189-90, 628 S.E.2d 787, 794-95 (2006) ). We agree with the lower appellate court that this type of vivid communication to the jury falls within the realm of permissible hyperbole on the part of the State in line with our precedent. See State v. Braxton , 352 N.C. 158, 203, 531 S.E.2d 428, 454 (2000) (opining that the State's argument that the defendant's self-defense claim was "vomit on the law of North Carolina" was permissible hyperbole), cert. denied , 531 U.S. 1130, 121 S.Ct. 890, 148 L.Ed.2d 797 (2001) ; see also State v. Harvell , 334 N.C. 356, 363, 432 S.E.2d 125, 129 (1993) (stating that failure to convict the defendant would amount to "a wound that's going to fester" was permissible hyperbole).
The final passage of the State's closing argument which defendant argues is grossly improper and prejudicial concerns the prosecutor's **85 reference to defendant's potentially delusional, but factually plausible, motives for stabbing Cassidy. This portion of the prosecutor's summation would encompass defendant's claims that Cassidy allowed defendant's medication to be stolen and told defendant to put defendant's belongings away, that Cassidy had disrespected defendant, and that Cassidy had shot defendant when defendant was a child. Defendant posits now that there is no evidence in the trial record to show that these events actually occurred and therefore "[w]holly imagined events cannot create a rational basis for a defendant's actions." Following a competency hearing, the trial court found defendant to be competent to stand trial for the charged offenses. During the trial, references were made to these events through testimonial evidence that is contained in the record. Based on the evidence *845 generated during the trial and the accompanying issues, defendant's mental state was argued to the jury by the State and the defense in their respective closing arguments. Later, the jury was instructed on the concept of diminished capacity and its possible effect on the ability to form the specific intent to kill. As previously noted, the principles espoused by this Court in Jones , Mitchell , and Alston are jointly invoked so as to establish that the prosecutor's closing argument in this arena of the case is substantiated by the trial record's context, that the prosecutor's statements about the existence of defendant's motives to harm Cassidy served to sharpen and clarify the issues for the jurors as the triers of fact, and that ultimately the trial court was not under a duty to intervene ex mero motu during the State's closing argument because the summation was not grossly improper.
In light of the facts and circumstances of this case, the trial record, the legal theories presented by the parties, and the applicable law, we cannot conclude that the trial court erred in declining to interject itself into the State's closing argument while defendant chose to sit silently and raise no objection to the now-challenged remarks. The portions of the State's summation that have been addressed before this Court do not rise to the level of those previously found in our case decisions to be so grossly improper as to require ex mero motu action by the trial court. Accordingly, we affirm the Court of Appeals' decision on this issue.
Conclusion
In sum, we reverse the determination by the Court of Appeals regarding the sufficiency of the short-form indictment and reinstate the judgment entered upon defendant's conviction for attempted first-degree murder. We affirm the portion of the Court of Appeals' decision which concludes that the trial court did not abuse its discretion in declining to intervene ex mero motu during the State's closing argument.
**86 AFFIRMED IN PART; REVERSED IN PART.
Justice DAVIS did not participate in the consideration or decision of this case.

Black's Law Dictionary does not supply a definition for the word "murder" when used as a verb.

In the Court of Appeals, defendant challenged additional portions of the State's closing argument, but defendant did not petition this Court for review of the Court of Appeals' ruling on those portions, and therefore we do not address them here.