IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-656

No. COA 22-114

Filed 4 October 2022

Wake County, No. 17 CRS 222820

STATE OF NORTH CAROLINA

v.

CHARLES SINGLETON, Defendant.

Appeal by Defendant-Appellant from judgment entered 5 August 2021 by Judge Jeffery B. Foster in Wake County Superior Court. Heard in the Court of Appeals 23 August 2022.

*Attorney General Josh H. Stein, by Assistant Attorney General Benjamin Szany, for the State.*

*Danielle Blass for the Defendant-Appellant.*

DILLON, Judge.

¶ 1 On 5 August 2021, Charles Singleton ("Defendant") was found guilty of second-degree forcible rape and first-degree kidnapping in connection with an encounter he had when he was 63 years old with an intoxicated, 18-year-old female college student (hereinafter "Jane") during the early morning hours of 26 November 2017.

## I. Background

On Saturday 25 November 2017, Jane went to a restaurant-bar on Fayetteville Street in downtown Raleigh with a group of friends. At the time, Jane was in her freshman year in college and was home for Thanksgiving break. That evening and into the early morning hours of Sunday 26 November 2017, she consumed several alcoholic beverages, becoming highly impaired.

Around 2:00 a.m. that Sunday morning, Jane was dancing with her older sister and a friend inside the restaurant-bar. She testified that her next memory was from about 3 1/2 hours later, at 5:25 a.m., when she found herself inside of Defendant's car in a parking lot several blocks from Fayetteville Street with Defendant on top of her engaging in sexual intercourse with her.

Security video cameras in downtown Raleigh show that at about 2:25 a.m. Defendant helped Jane into the passenger seat of his car, then got into the driver's seat, and drove away.

Jane testified as follows: When she became aware that she was in Defendant's car at around 5:25 a.m., she told Defendant to get off her. Defendant complied. She tried to locate her cell phone and asked Defendant to call her number from his cell phone number. Defendant complied. Almost immediately after realizing that her cell phone was nowhere to be found, she fled the scene on foot. Defendant did not try

to prevent her from fleeing. Around 6:00 a.m., she arrived at a gas station and called her sister for help.

¶ 6       Over the next few hours, Jane was taken to a police station, where she reported that she was raped by an older man, and then to InterAct, where she underwent a physical exam. She remained impaired by the alcohol that she had consumed several hours earlier. Blood and hair samples were taken during the exam.

¶ 7       At 8:27 a.m,, three hours after running from Defendant's car, Jane took a breath test, which showed her alcohol content to be .13.

¶ 8       Defendant testified as follows concerning his encounter with Jane: A little after 2:00 a.m., he came upon Jane lying on the sidewalk near Fayetteville Street. He woke her up. He asked her if she would like to get in his car to get out of the cold. She consented. He helped her to his car. They engaged in small talk. Eventually, she fell asleep in his car. He drove around, away from the busyness of Fayetteville Street, to a secluded parking lot. At some point, she woke up and asked Defendant to have sex with her. He complied. They rested for about 30 minutes and then engaged in consensual sex again. Jane then asked Defendant to help her find her phone and to call her phone. She then "took off." He did not see her again.

¶ 9       Defendant was tried for second-degree rape and first-degree kidnapping. He was sentenced to two terms of 73-148 months to run consecutively. Defendant appeals, challenging both convictions.

## II. Analysis

## A. Second-Degree Rape

¶ 10 Defendant was convicted for violating Section 14-27.22(a)(2) of our General Statutes, which provides that a person commits second-degree forceable rape when he "engages in vaginal intercourse with another person" who is "physically helpless" and he "knows or should reasonably know that the other person [is] physically helpless." N.C. Gen. Stat. § 14-27.22(a)(2) (2017).

¶ 11 Defendant contends the superior court lacked jurisdiction to try him for this crime because the charging indictment from the grand jury failed to allege one of the essential elements; namely, that he knew or reasonably should have known that Jane was physically helpless when he engaged in sexual intercourse with her. For the reasoning below, we must agree with Defendant.

¶ 12 In this case, the grand jury alleged as follows in its indictment against Defendant for second-degree rape:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about November 26, 2017, in Wake County, the defendant named above unlawfully, willfully, and feloniously did engage in vaginal intercourse with [Jane], who was at the time, physically helpless. This act was done in violation of NCGS § 14-27.22.

Though there was sufficient evidence presented *at the trial* from which the jury could find that Defendant knew or reasonably should have known that Jane was physically helpless, this indictment contains no such allegation.

¶ 13    A key purpose of an indictment is to give "reasonable notice of the charge against him . . . so that he may prepare his defense and protect himself against double jeopardy." *State v. Spivey*, 368 N.C. 739, 744, 782 S.E.2d 872, 875 (2016).

¶ 14    But another purpose of an indictment in North Carolina is to confer upon the superior court jurisdiction to try a defendant. Indeed, the Declaration of Rights contained in our North Carolina Constitution require the grand jury to indict and a petit jury to convict for the offenses charged by the grand jury. N.C. Const. art. I, § 22. As our Supreme Court has noted, "Every [citizen] . . . has a right to the decision of twenty-four of his fellow citizens upon the question of his guilt; first, by a grand jury, and secondly, by a petty jury of good and lawful [citizens]." *State v. Moss*, 47 N.C. 66, 69 (1854).

¶ 15    In some jurisdictions, the failure to allege an essential element of a crime in the indictment is not jurisdictional and can be waived. *See, e.g., United States v. Cotton*, 535 U.S. 625, 631 (2002) (failure of an indictment to charge a federal crime is not a jurisdictional defect but rather "only goes to the merits of the case.") Treating this defect as non-jurisdictional appears to be the majority view. *See State v. Dunn*, 375 P.3d 332, 355 304 Kan. 773 (2016) ("Indeed, the view that a failure to include an

essential element in the charging document is a jurisdictional defect [has] quickly become the minority view in state and federal jurisdictions.")

¶ 16        However, North Carolina continues to follow the minority view, that the failure to allege each element of the crime is a jurisdictional defect which can be raised for the first time on appeal. *State v. Williams*, 368 N.C. 620, 622, 781 S.E.2d 268, 270 (2016) ("Where an indictment is alleged to be invalid on its face, thereby depriving the trial court of jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court.")

¶ 17        The State argues that the indictment in this case is, nonetheless, sufficient under Section 15-144.1(c), which allows a so-called "short form" indictment in the prosecution of second-degree rape. That statute provides, in relevant part, that:

> If the victim is . . . physically helpless, it is sufficient to allege that the defendant unlawfully, willfully, and feloniously did carnally know and abuse a person . . . who was . . . physically helpless . . . ."

N.C. Gen. Stat. § 15-144.1 (2017). Though such allegations do not detail the facts supporting the crime alleged, they do touch on all the elements of Section 14-27.22(3).

¶ 18        And our Supreme Court has held that an indictment is not necessarily fatal if its language does not use the precise language of a statute allowing for short form indictment language, so long as the indictment uses language that is synonymous with the statutory language. *See State v. Tart*, 372 N.C. 73, 77, 824 S.E.2d 837, 840

(2019). In *Tart*, our Supreme Court analyzed a short form murder indictment which used the phrase "slay . . . with malice aforethought" instead of the word "murder" as required by statute. *Id.* at 76, 824 S.E.2d at 839. While recognizing that the words "slay" and "murder" are not interchangeable, the Court held that the word "slay" coupled with "with malice aforethought" was sufficient. *Id.* at 79, 824 S.E.2d at 841 ("We hold that the use of the term "slay" instead of "murder" in an indictment that also includes an allegation of "malice aforethought" complies with the relevant constitutional and statutory requirements for valid murder offense indictments[.]")

¶ 19 The indictment here uses the phrase "engaged in vaginal intercourse" where the statute requires the phrase "carnally know and abuse." While the phrase used in the indictment is a sufficient substitute for "carnally know," it is not a sufficient substitute for the word "abuse". The verb "abuse" (or some equivalent) is required as a means of describing the essential element that was omitted from the indictment here, that Defendant "knew or reasonably should have known" that Jane was physically helpless. The inclusion of "abuse" is necessary to describe that Defendant knew and took advantage of Jane's physical inability to resist his advances.

¶ 20 Again, there was sufficient evidence presented at trial that Defendant raped Jane. However, the indictment simply fails to allege the crime. We have no choice but to vacate the portion of the judgment convicting Defendant of second-degree rape and dismiss the indictment.

### B. First-Degree Kidnapping

¶ 21 Defendant argues the trial court erred by failing to dismiss the charge of first-degree kidnapping for insufficiency of the evidence.

¶ 22 To survive a motion to dismiss, there must be substantial evidence of each essential element of the crime and that the defendant is the perpetrator. *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015). When reviewing the evidence to determine whether it is substantial enough to survive a motion to dismiss, evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference from the evidence. *Id.* at 574, 780 S.E.2d 826. "Whether the State presented substantial evidence of each essential element is a question of law", which we review *de novo. State v. Phillips*, 365 N.C. 103, 133-34, 711 S.E.2d 122, 144 (2011).

¶ 23 We note that the indictment charging Defendant with first-degree kidnapping alleges the wrong date. Where the events occurred in November 2017 – and the portion of the indictment alleging Defendant with rape alleges the correct date – the portion of the indictment charging him with kidnapping alleges that he committed the act in November 2018. This defect, however, is not fatal, as the date is not an essential element and as there is no indication that Defendant was prejudiced thereby. *See, e.g., State v. Price*, 310 N.C. 596, 599, 313 S.E.2d 556, 559 (1984).

¶ 24 In any event, the essential elements of the offense of first-degree kidnapping

relevant to this case are that the defendant (1) "confined, restrained, or removed" the victim, (2) without the consent of the victim, (3) to facilitate the commission of a felony, and (4) the defendant did not release the victim in a safe place. N.C. Gen. Stat. § 14–39 (2017).

¶ 25 We conclude the evidence, when viewed in the light most favorable to the State, is sufficient to support the jury's verdict.

¶ 26 There was evidence that Defendant removed Jane from the busy part of downtown Raleigh when he placed her in his car and drove away with her.

¶ 27 There was evidence that Defendant removed Jane without her consent, as there was evidence that Jane was severely impaired. Even if Jane consented to get in Defendant's car to get out of the cold, as he testified, there is evidence that she fell asleep, and that Defendant (without her consent) drove her away to a more secluded spot. And there is evidence that Defendant removed Jane to the secluded parking lot for the purpose of committing second-degree rape on a physically helpless person. *See State v. White*, 307 N.C. 42, 48-49, 296 S.E.2d 267, 271 (1982).

¶ 28 Finally, there was evidence from which the jury could infer that Defendant did not release Jane in a safe place. It may be that Defendant allowed Jane to escape and therefore "released" her. However, there is sufficient evidence that the location of the release was not a "safe place", given her condition. Jane was severely impaired. The area was secluded, away from the area that she was familiar with. It was more

than an hour before sunrise on a Sunday morning, when very few places were open. She was some distance from a place where she could get help in her impaired state. Defendant did not attempt to follow her to make sure she found help.

¶ 29        Accordingly, we find no error regarding Defendant's kidnapping conviction.

## III. Conclusion

¶ 30        The portion of the indictment charging Defendant with second-degree rape is fatally defective, as it fails to allege that Defendant knew or reasonably should have known that Jane was physically helpless and thus failed to convey jurisdiction on the court to adjudicate this offense. Due to the trial court's lack of jurisdiction, Defendant was never placed in jeopardy as to second-degree rape. Therefore, we vacate the portion of the judgment convicting Defendant of that crime without prejudice to the State to re-indict Defendant or to Defendant to challenge a new indictment under N.C. Gen. Stat. § 15A-926(c) or other law.

¶ 31        Regarding the portion of the judgment convicting Defendant of first-degree kidnapping, we conclude Defendant received a fair trial, free from reversible error. Defendant, of course, may seek relief in the trial court to have his credit for time served which was applied to his rape conviction applied to his kidnapping conviction.

NO ERROR IN PART; VACATED & DISMISSED IN PART.

Judges CARPENTER and GORE concur.