STATE OF NORTH CAROLINA v. WILLIAM CHRISTOPHER GREGORY

No. 410A94

(Filed 9 February 1996)

**1. Appeal and Error § 406 (NCI4th)— capital case—failure to object or allege plain error—consideration of question under plain error analysis**

Although defendant failed to object at trial and failed to include the words "plain error" in his brief, the Supreme Court, in the exercise of its discretion under Rule 2 of the Rules of Appellate Procedure and following precedent of the Court electing to review unpreserved assignments of error in capital cases, elected to consider under a plain error analysis defendant's contention that his right to a fair trial was violated by a colloquy between the trial court and a prospective juror where defendant succeeded in presenting and arguing the issue fully and in establishing that fundamental error meeting the standard of plain error had occurred.

**Am Jur 2d, Appellate Review §§ 486, 767 et seq.**

**2. Constitutional Law § 261 (NCI4th)— capital trial—colloquy between court and prospective juror—presence of trial jurors—denial of impartial jury**

Defendant's right to an impartial jury was violated in a capital trial when the trial court asked prospective jurors if anyone had a compelling reason for being excused or deferred, and an employee of defendant's former attorney told the court in the

presence of eight persons who served on the jury in defendant's trial, convicted him and recommended a sentence of death that she helped prepare defendant's defense, she had learned confidential information favorable to the State, and the knowledge of such information might influence her decision, since this dialogue between the court and this prospective juror had the potential to lead jurors to rely on assumptions about evidence not presented at trial. This error was not cured by the trial court's curative instruction to the remaining prospective jurors not to consider anything they had heard from this particular prospective juror when viewed in light of the evidence introduced and the issues thereby raised for resolution by the jury.

**Am Jur 2d, Criminal Law §§ 649, 838.**

**Professional or business relations between proposed juror and attorney as ground for challenge for cause. 52 ALR4th 964.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Gray, J., at the 1 August 1994 Criminal Session of Superior Court, Davie County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments for assault with a deadly weapon with intent to kill inflicting serious injury and felonious breaking and entering was allowed 7 June 1995. Heard in the Supreme Court 14 December 1995.

*Michael F. Easley, Attorney General, by Thomas S. Hicks, Special Deputy Attorney General, for the State.*

*Burton Craige and Donnell Van Noppen III for defendant-appellant.*

ORR, Justice.

Defendant was indicted for first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and felonious breaking and entering. He was tried capitally to a jury that found him guilty of all charges. The charges against defendant arose out of an incident that occurred at the home of defendant's seventeen-year-old former girlfriend, Evette Howell. The State's evidence tended to show that defendant broke into the Howell home and retrieved a .25-caliber handgun belonging to Evette's father from the

father's bedroom closet. Defendant walked into Evette's bedroom and fatally shot her in the head in the presence of their eighteen-month-old child. Defendant then crossed the hall into the bedroom of Evette's fifteen-year-old brother, Fonzie, struck him in the head with the gun and shot him in the forehead. Fonzie survived, suffering life-altering injuries. Although defendant had confessed to shooting Evette, he argued at trial that he did not have a specific intent to kill and that his cousin, who was in the house when the shootings occurred, shot Fonzie.

Defendant contends that he should receive a new trial because his constitutional right to trial by an impartial jury was violated during jury selection. We agree.

On 11 August 1992, the trial court found defendant indigent and appointed Wade Leonard and William Ijames to represent him. During jury voir dire, the trial court relieved attorneys Leonard and Ijames and appointed David Minor and Sam Winthrop as defendant's trial counsel. The case was rescheduled for trial beginning on 1 August 1994.

Jury selection began on 1 August 1994. After the luncheon recess on 2 August, the trial court addressed the prospective jurors called for 2 August. The court welcomed the jurors, stated the offenses with which defendant was charged, introduced the attorneys, and stated the statutory qualifications for jury service. The court then addressed the issue of jury deferment and asked prospective jurors if anyone had a compelling reason for being excused or deferred and, if so, to state the reason in open court.

One of the prospective jurors who stepped forward was Diana Ijames. She asked to be excused because she had assisted defendant's former attorney, William Ijames, in preparing the defense of this case. The discussion between the court and Ms. Ijames occurred in the presence of eight prospective jurors who ultimately were chosen to sit on the petit jury that deliberated on the case. The following is the specific dialogue that took place:

PROSPECTIVE JUROR: My name is Diana Ijames.

THE COURT: I-j-a-m-e-s?

PROSPECTIVE JUROR: I work for Mr. Bill Ijames, William James Ijames, the attorney on the first case. So I helped prepare the defense for Mr. Chris Gregory.

THE COURT: Do you believe if you were to serve as a juror in this case that you could base your verdict entirely on what you hear from the witness stand over here and the Court's instruction to you on the law?

PROSPECTIVE JUROR: I feel I could, sir.

THE COURT: All right. Do you feel like in connection with the preparation of this case that you learned some things during the course of the preparation that would be confidential and if learned by the State would be favorable to the State?

PROSPECTIVE JUROR: Would be favorable to the State?

THE COURT: To the State.

PROSPECTIVE JUROR: Yes, sir, I do.

THE COURT: Do you feel like those things that you learned in a confidential fashion during the preparation for the trial of the case would influence your decision in the case, your verdict in the case?

PROSPECTIVE JUROR: (No response from prospective juror.)

THE COURT: In other words, you apparently have some information that other jurors would not have; is that right?

PROSPECTIVE JUROR: Yes, your Honor.

THE COURT: Would that influence your decision in the case if you were allowed to serve on the jury?

MR. MINOR [defendant's attorney]: May we approach the bench before you continue with this question?

PROSPECTIVE JUROR: I feel it may influence my decision, yes, sir.

After a bench conference, the court excused Ms. Ijames and gave the remaining prospective jurors the following instruction:

Ladies and gentlemen of the jury that have been summoned for jury duty, you are instructed at this time anything you have heard from this particular juror you have to strike it from your mind, not to give it any consideration at all.

[1] Defendant argues that this dialogue constituted error that violated his constitutional right to trial by an impartial jury. Although

defendant requested the limiting instruction, he made no objection during the court's questioning of Ms. Ijames and does not specifically claim in his assignment of error that it constituted plain error. Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure provides, in pertinent part, that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion . . . ."

Under the plain error rule, errors or defects affecting substantial rights may be addressed even though they were not brought to the attention of the trial court. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Rule 10(c)(4) of the North Carolina Rules of Appellate Procedure provides:

> In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

In limited situations, this Court may elect to review such unpreserved issues for plain error, if specifically and distinctly contended to amount to plain error in accordance with Rule 10(c)(4). This Court has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence. *See State v. Sierra*, 335 N.C. 753, 440 S.E.2d 791 (1994); *State v. Collins*, 334 N.C. 54, 431 S.E.2d 188 (1993); *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375.

This specific error alleged by defendant involves neither jury instructions nor a ruling on the admissibility of evidence. Moreover, since defendant did not object at trial or allege plain error, he has failed to properly preserve this issue for appeal. *State v. Moseley*, 338 N.C. 1, 36, 449 S.E.2d 412, 433-34 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 738 (1995); N.C. R. App. P. 10.

However, Rule 2 of the North Carolina Rules of Appellate Procedure provides:

> To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its

own initiative, and may order proceedings in accordance with its directions.

In *State v. Moseley,* we elected to apply plain error analysis even though the defendant had neither objected nor alleged plain error. We stated that "since this is a case in which the death penalty was imposed, we will consider the merits of the issue under a plain error analysis." *Moseley,* 338 N.C. at 36, 449 S.E.2d at 434. This reasoning is consistent with prior holdings by this Court in capital cases in which we elected to address an error not properly preserved. *See State v. Payne,* 328 N.C. 377, 394, 402 S.E.2d 582, 592 (1991) (although defendant waived his right to have an issue considered on appeal by failing to object or move for mistrial, because this was a capital case, the Court chose to address the issue); *State v. Price,* 326 N.C. 56, 87, 388 S.E.2d 84, 102 (in a capital case, even though defendant did not object at trial and the assignment of error was improperly submitted to the appellate court, the Court may review the prosecutor's argument), *sentence vacated on other grounds,* 498 U.S. 802, 112 L. Ed. 2d 7 (1990); *State v. Warren,* 289 N.C. 551, 558, 223 S.E.2d 317, 322 (1976) (where defendant did not object or assign error, because this was a capital case, the Court *ex mero motu* took cognizance of the error); *State v. Chance,* 279 N.C. 643, 657, 185 S.E.2d 227, 236 (1971) (in capital cases, the Court reviews the record and *ex mero motu* takes notice of prejudicial error), *sentence vacated in part on other grounds,* 408 U.S. 940, 33 L. Ed. 2d 764 (1972); *State v. Fowler,* 270 N.C. 468, 472, 155 S.E.2d 83, 86 (1967) (in a capital case, the Court picks up any errors that appear in the record, whether excepted to and assigned as error or not); *State v. Knight,* 248 N.C. 384, 390, 103 S.E.2d 452, 456 (1958) (where defendant did not assign error, because the Court was dealing with a capital case, it took cognizance of the error *ex mero motu*); *State v. Herring,* 226 N.C. 213, 214, 37 S.E.2d 319, 320 (1946) (although assignments of error were not in compliance with the rules, because this was a capital case wherein the life of the defendant was at stake, these assignments of error were considered).

In this enlightened age the humanity of the law is such that no man shall suffer death as a penalty for crime, except upon conviction in a trial free from substantial error and in which the constitutional and statutory safeguards for the protection of his rights have been scrupulously observed. Therefore, in all capital cases reaching this Court, it is the settled policy to examine the record for the ascertainment of reversible error. If, upon such an

examination, error is found, it then becomes the duty of the Court upon its own motion to recognize and act upon the error so found.

*State v. McCoy*, 236 N.C. 121, 123, 71 S.E.2d 921, 922 (1952) (citations omitted), *quoted in State v. Warren*, 289 N.C. at 558, 223 S.E.2d at 321-22.

In this case, although defendant failed to include the exact words "plain error" in his brief, he succeeded in presenting and arguing the issue fully and in establishing conclusively that fundamental error meeting the standard of plain error enunciated in *State v. Odom* occurred. Therefore, in the exercise of our discretion under Rule 2 of the Rules of Appellate Procedure and following the precedent of this Court electing to review unpreserved assignments of error in capital cases, we elect to consider defendant's contention under a plain error analysis. Plain error includes error that is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done; or grave error that amounts to a denial of a fundamental right of the accused; or error that has resulted in a miscarriage of justice or in the denial to appellant of a fair trial. *State v. Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

**[2]** Defendant claims that he was denied a fair trial because the exchange between the court and Ms. Ijames violated his constitutional right to trial by an impartial jury. The United States Supreme Court has held that the Sixth Amendment and the Fourteenth Amendment's Due Process Clause require the impartiality of any jury impaneled to try a cause:

"In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. *In re Oliver*, 333 U.S. 257[, 92 L. Ed. 682] (1948); *Tumey v. Ohio*, 273 U.S. 510[, 71 L. Ed. 749] (1927). 'A fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison*, 349 U.S. 133, 136[, 99 L. Ed. 942, 946] (1955). In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne.' Co. Litt. 155b. His verdict must be based upon the evidence developed at the trial. Cf. *Thompson v. City of Louisville*, 362 U.S. 199[, 4 L. Ed. 2d 654] (1960). This is true, regardless of the heinousness of the crime

charged, the apparent guilt of the offender or the station in life which he occupies. It was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 (1807). 'The theory of the law is that a juror who has formed an opinion cannot be impartial.' *Reynolds v. United States*, 98 U.S. 145, 155[, 25 L. Ed. 244, 246 (1878)]."

*Morgan v. Illinois*, 504 U.S. 719, 727, 119 L. Ed. 2d 492, 501 (1992) (quoting *Irvin v. Dowd*, 366 U.S. 717, 721-22, 6 L. Ed. 2d 751, 755 (1961) (footnote omitted)).

In applying this principle to the analogous situation of prejudicial pretrial publicity, the court in *United States v. Williams*, 568 F.2d 464 (5th Cir. 1978), stated that "[o]ne of the fundamental rules of criminal law is that the government has the burden of establishing guilt solely on the basis of evidence produced in the courtroom and under the circumstances assuring the defendant the attendant judicial safeguards." *Id.* at 470 (citing *Patterson v. Colorado ex rel. Att'y Gen.*, 205 U.S. 454, 462, 51 L. Ed. 879, 881 (1907) ("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print.")).

In the case at bar, because of the court's questioning of Ms. Ijames, eight of the jurors who determined defendant's guilt and ultimately recommended the death sentence heard Ms. Ijames say, "I helped prepare the defense for Mr. Chris Gregory;" answer "Yes" when the court asked if she had learned confidential information which would be favorable to the State if learned by the State; and say about that confidential information, "I feel it may influence my decision." As aptly argued by defendant, this information left the eight jurors who heard the conversation free to speculate about the nature of the damning information that defendant and his attorneys were presumably hiding from their view. If the jury saw any gaps in the evidence, the colloquy with Ms. Ijames invited them to fill in the gaps on the assumption that the missing information was favorable to the State. Because the dialogue between the court and Ms. Ijames had the potential to lead jurors to rely on assumptions about evidence not presented at trial, we cannot be satisfied that the verdict was based solely upon the evidence developed at the trial. The dialogue was likely to cause the jurors to form an opinion before they heard any evidence at trial, and, as quoted above, a juror who has formed an opinion cannot be impartial.

The State argues that any error was corrected by the trial court's curative instruction. We are not persuaded by this argument. Although the law presumes that jurors will understand and comply with the instructions of the court, *State v. Britt*, 288 N.C. 699, 713, 220 S.E.2d 283, 292 (1975); *State v. Long*, 280 N.C. 633, 641, 187 S.E.2d 47, 52 (1972), this Court has held that some errors are so inherently prejudicial that they may not be considered "cured" even though the trial court has given a strong corrective instruction, *State v. Sanderson*, 336 N.C. 1, 18, 442 S.E.2d 33, 43 (1994).

In *State v. Aycoth*, 270 N.C. 270, 154 S.E.2d 59 (1967), an armed robbery case, the unresponsive statement of a witness informed the jury that the defendant had been indicted for murder, and the trial court allowed defendant's motion to strike and instructed the jury not to consider what the witness said about defendant having been indicted for murder. There, we stated that whether the prejudicial effect of such incompetent statements should be deemed cured by curative instructions depends upon the nature of the evidence and the circumstances of the particular case. *Id.* at 272-73, 154 S.E.2d at 60-61. After noting that subsequent incidents in the trial tended to emphasize rather than dispel the prejudicial effect of the testimony, we held that the prejudicial effect was not erased by the court's curative instruction and concluded that the court should have granted the defendant's motion for a mistrial. *Id.*

As in *State v. Aycoth*, in the case at bar, the subsequent incidents in the trial below tended to emphasize rather than dispel the prejudicial effect of the statements made by Ms. Ijames. Since the inquiry at issue took place prior to any evidence being offered in the case and no objection was made to the trial court's actions, the trial court's curative instruction may well have seemed a reasonable and prudent course of conduct. However, when viewed in light of the evidence introduced at trial and the questions thereby raised, which were to be resolved by the jury, the potential prejudice to defendant becomes apparent.

Defendant presented only one witness at trial, Dr. Bert Bennett, a psychologist who saw defendant on five occasions. Dr. Bennett testified that in his opinion, defendant did not have the intent to kill Evette Howell when he shot her. Evidence at trial also called into question whether defendant or defendant's cousin, Gabe Wilson, shot Fonzie. That evidence included the following facts introduced at trial: in his statement to police, defendant stated that Wilson shot Fonzie;

in exchange for testifying against defendant, the State promised Wilson to keep his case in juvenile court and to release him from juvenile detention when he reached age eighteen; and the SBI was unable to perform a gunshot residue analysis to determine whether Wilson could have shot Fonzie because more than nine hours had elapsed between the time the weapon was fired and the time the hand-wiping samples were obtained from Wilson. Thus, the issues of defendant's intent to kill Evette and of defendant's role in Fonzie's shooting were both controverted.

Once these subsequent issues in the trial were raised, the significant prejudice of Ms. Ijames' statements became manifest. We cannot know whether Ms. Ijames' declarations that she knew confidential information about the case *favorable to the State* and that the knowledge of such information might "influence" her decision did in fact influence the jury's resolution of these issues, and thereby its decision in either the guilt or the sentencing proceedings. However, the potential for such knowledge to impact the jury's decisions is too great, and the result of such impact too prejudicial to defendant, to hold that the curative instruction prior to the submission of evidence sufficiently removed any adverse impression from the minds of the jurors.

We conclude that this error resulted in the denial to defendant of a fair trial; therefore, it constitutes plain error. For the foregoing reasons, defendant is entitled to a new trial.

NEW TRIAL.