An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-754

NORTH CAROLINA COURT OF APPEALS

Filed: 31 December 2014

STATE OF NORTH CAROLINA

v.

DAVID LARRY WILLIAMS

Wake County
No. 09 CRS 025171

Appeal by defendant from judgment entered 19 July 2013 by Judge R. Allen Baddour in Wake County Superior Court. Heard in the Court of Appeals 3 December 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Linda Kimbell, for the State.*

> *Leslie C. Rawls, for defendant.*

ELMORE, Judge.

On 19 July 2013, a jury found defendant guilty of felony stalking. The trial court sentenced defendant to 34-41 months of active imprisonment. After careful consideration, we find no prejudicial error.

## I. Facts

On 6 May 2013, a grand jury indicted defendant on two counts of felony stalking. The date of offense listed on the indictment for the first charge was between 1 December 2008 and 9 February 2009, and the date of offense for the second charge was between 24 September 2008 and 30 November 2008.

At trial, the trial court dismissed the first charge for insufficient evidence. The trial court did not subsequently instruct the jurors that they could not consider the events between 1 December 2008 and 9 February 2009 (the post-December evidence) as substantive evidence of the remaining charge. During closing arguments, both the State and defendant referred to the post-December evidence in support of their legal theories.

Following closing arguments, the trial court gave jury instructions but did not explicitly specify the time period between 24 September 2008 and 30 November 2008 as the relevant dates for the jury's consideration of guilt on the remaining charge: "If you find from the evidence beyond a reasonable doubt that *on or about the alleged dates* the defendant [committed the crime of felony stalking]. . . it would be your duty to return a verdict of guilty." (emphasis added). The jury returned with a

unanimous guilty verdict on the remaining charge, and defendant appealed the trial court's judgment in open court.

## II. Analysis

### a.) Closing arguments

Defendant contends the trial court erred by allowing the State, without limitation, to refer to post-December evidence during closing arguments.  We disagree.

Pursuant to N.C. Gen. Stat. § 15A-1443(c) (2013), "[a] defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." Accordingly, "a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Hope*, ___ N.C. App. ___, ___, 737 S.E.2d 108, 111 (2012), *review denied,* 366 N.C. 438, 736 S.E.2d 493 (2013) (citation and internal quotation marks omitted).

Even if the trial court erred by allowing the State, without limitation, to argue post-December evidence during closing arguments, defendant invited such error.  After defendant's motion to dismiss the first charge was granted, the following colloquy occurred:

> PROSECUTOR: If I may just inquire to the
> facts
> past December 1st, while you've dismissed
> [the first charge], is the State still able
> to argue those acts to the relevance of --

THE COURT: Sure.

PROSECUTOR: Okay.

DEFENDANT'S ATTORNEY: Yeah.

PROSECUTOR: I just did not want to --

THE COURT: Sure. That's fine.

PROSECUTOR: -- did not want to overstep any boundaries in closing arguments.

The trial court clarified that the prosecutor would be permitted to argue post-December evidence during closing arguments and defendant's attorney openly acquiesced to the trial court's ruling.

During the charge conference (before closing arguments) the trial court, without any objection, or request for clarification from either party, stated:

THE COURT: Okay. Then let me also tell you all that what I would do after I've removed [the dismissed charge] is probably at the very beginning of page 3 . . . it said the defendant has been charged with two counts of stalking. It would say charged with stalking, and I would remove the [dismissed charge] and the dates. You all can argue -- the dates aren't ordinarily in an instruction. It was just to give them bookends. But you're certainly welcome to mention and argue the dates that, you know, things had happened or didn't happen between those relevant dates, but I don't think they're necessary for the instruction. So I just want to make sure you all knew that.

Moreover, defendant's attorney argued post-December evidence in the first portion of his closing argument (before the prosecutor gave his closing argument) and in the second portion of his closing argument (after the prosecutor gave his closing argument):

> Now, the next time [the victim] called the detective was December 15, 2008. This was two days after the second car scratching. And when she talked to the detective on December 15, she told -- you know, that's six weeks' gap between the last conversation she had. And she told the detective that on moving day that she thought [defendant] was following her, she turned the car around and followed him. That's what she told him. But she left out that terrifying event that she described it [sic] when [defendant] was supposed to come out to her new apartment at 10:45 or 11:00 in the evening[.] . . . She didn't tell him about that. She told him about [defendant] following her the day before. And she left off the North Hills scratching, the car scratching incident where North Hills was supposed to have been scratched in the side of the car. It happened two days before that, if it happened.
>
> . . .
>
> The latest stretch that you all heard was the North Hills scratching on the car, scratching the words "North Hills" into her car door. That happened here in court, and it is a big detail. Now, that would have been significant, scratching the word "North Hills" into the car. That was not said to the officer to whom she reported the

> scratching. The car vandalism on December 13, 2008, not reported. Didn't say a word about it in the report. She talked to the detective two days later, December 15, '08. Not a word about that scratching North Hills into the car. Nothing. She testified -- she and her father both testified in April 2011. Neither one of them mentioned North Hills being scratched into the car.

Defendant's attorney also told the jury that although a GPS tracking device may have been found on the victim's car on 25 January 2009, "[there] [was] no evidence that [the] GPS was ever working [or] was ever activated."

Defendant cannot now contend on appeal that the trial court committed reversible error by allowing the State to argue about post-December evidence, when his trial attorney agreed that the prosecutor should be allowed to discuss post-December evidence during closing arguments and the attorney referred to such evidence during defendant's own closing argument. Accordingly, we dismiss this issue on appeal.

**b.) Jury Instructions**

Defendant's remaining arguments all relate to the trial court's jury instructions. He argues that the trial court erred by failing to provide limiting instructions regarding post-December evidence, giving the jury overbroad instructions that encompassed the dates and evidence of the dismissed charge,

failing to instruct the jury on the dates to consider in its deliberations, and failing to instruct the jury that post-December evidence could not be considered substantive evidence in reaching its verdict. We disagree.

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4); *see State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996) ("This Court has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence.").

Plain error is an error "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citations and quotation marks omitted). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

At trial, defendant's attorney did not ask for a limiting instruction regarding the jury's consideration of post-December evidence nor did he object to any of the other jury instructions. Thus, we review such unpreserved issues for plain error.

The offense date for the remaining charge was between 24 September 2008 and 30 November 2008. During this time period, the controlling statute was N.C. Gen. Stat. § 14-277.3 (2007), which has been subsequently repealed by N.C. Gen. Stat. § 14-277.3A (2009). The trial court correctly tracked the language of the former statute in its jury instructions, and instructed the jury that the State must prove:

> First, that the defendant willfully on more than one occasion followed, was in the presence of, or otherwise harassed the victim without legal purpose. Second, that the defendant at that time had the intent to place the victim in reasonable fear for the victim's
> safety or the safety of the person's immediate family or close personal associates. One is placed in reasonable fear when a person of reasonable firmness under the same or similar
> circumstances would fear death or bodily injury or caused the victim to suffer substantial emotional distress by placing the
> victim in fear of death, bodily injury, or continued harassment. And, third, that the defendant's actions did, in fact, cause the victim substantial emotional distress.

The evidence presented by the State showed that between 24 September 2008 and 30 November 2008, the following occurred: The victim and defendant were in a relationship for about five weeks, until she broke up with defendant. Defendant had been to the victim's apartment on at least one occasion. After the victim ended the relationship, defendant continually called her phone, despite the victim repeatedly telling him to stop contacting her.

On 28 September 2008, the victim and a friend were leaving a local bar at approximately midnight, and defendant followed the victim in his car, ultimately parking his car behind the friend's vehicle. Defendant exited his vehicle, argued with the victim for a few minutes, and left. After this encounter with defendant, the victim did not feel safe sleeping at her apartment and stayed with her friend. The next day, the victim returned to her apartment and found that someone had broken in, although nothing was taken from the apartment. Feeling "scared" and "terrified[,]" the victim reported the incident to the local police department.

On 14 October 2008 at approximately 8:30 a.m., the victim was the first person to arrive to work. When she exited her

vehicle and walked towards her work building, defendant came out of a nearby wooded area, attempting to speak with her. The victim was "scared" and "startled" and threatened to call 911. Defendant immediately left the area.

On the night of 19 October 2008, the victim was asleep when she heard a knock on her door. When she looked through the door's peephole, she saw defendant. The victim did not answer the door and went back to sleep. At approximately 2:00 a.m., the victim awoke to a clinking sound on the balcony outside her bedroom window. She looked through the window and saw defendant climbing up a ladder. Fearful of defendant's conduct, the victim called 911, "yelling at the top of [her] lungs to the operator, '[p]lease send help.'" As the victim was on the phone, defendant climbed back down the ladder and ran away.

On 21 October 2008, the victim spent the night at a friend's residence. The next morning, she received a call from the Raleigh Police Department. In response, she drove to her apartment and found dead rose petals around her door and the stairs leading to her door. Later that day, the victim received a phone call at work from a woman purporting to be a member of "Victim Services." The woman provided the victim with a phone number to call if she needed any assistance with her situation

involving defendant. The victim called the following day, but defendant answered the phone and said, "[g]otcha."

Too afraid to sleep in her own apartment, the victim stayed with her father. At 6:00 a.m. on 24 October 2008, she went to the gym in her father's apartment complex. When she walked backed to her father's apartment it was still dark outside, and defendant appeared from underneath the stairs. Defendant stopped the victim and attempted to talk to her, stating, "[d]o not believe what the police have told you." The victim screamed, activated her car alarm and ran up the stairs. Defendant immediately left the area, and the victim's father unsuccessfully attempted to pursue him on foot. The victim reported this incident to the police.

Based on these events, the victim moved to a new apartment complex about five miles away and only told her father, uncle, grandmother, and some residents of her former apartment complex. Two days after the victim moved to the new apartment, and while she was walking towards the apartment entrance, defendant emerged and stated, "I know it wasn't cheap for you to move into this apartment. Why don't you come to my truck on the side of the building, and I'll give you some money?" Defendant screamed, told him to leave her alone, and he walked away. The

victim subsequently obtained a domestic violence protective order that was served on defendant on 7 November 2008.

The post-December evidence was far less substantial. Although property crimes were committed against the victim and a possible GPS tracking device discovered on her car, there was no evidence linking defendant to those events.

Given the overwhelming evidence to support each essential element of felony stalking occurring between 24 September 2008 and 30 November 2008 and the lack of post-December evidence directly attributable to defendant, we reject defendant's argument that had the trial court provided specific jury instructions addressing the post-December events and the dismissed charge, the jury would have probably reached a different verdict.

## III. Conclusion

In sum, we dismiss defendant's contention that the trial court erred by allowing the State, without limitation, to argue post-December evidence during closing arguments because defendant invited such error, if any. Moreover, the trial court did not commit plain error in its jury instructions because defendant has failed to show that absent the purported errors, the jury probably would have reached a different result.

No prejudicial error.

Judges CALABRIA and DAVIS concur.

Report per Rule 30(e).