An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-190

Filed 15 October 2025

Wake County, Nos. 21CR210767-910, 21CR210768-910, 21CR210770-910, 22CR000230-910

STATE OF NORTH CAROLINA

v.

DWIGHT JUDD JR., Defendant.

Appeal by Defendant from judgment entered 7 March 2023 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 14 January 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General John R. Green, Jr., for the State.*

> *Thomas, Ferguson & Baskind, LLP, by Olivia Warren, for Defendant-Appellant.*

CARPENTER, Judge.

Dwight Judd Jr. ("Defendant") appeals from judgment entered after a jury found him guilty of one count each of: attempted first-degree murder; assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI"); possession of a firearm by a felon; and assault on a female. On appeal, Defendant argues the

trial court erred by: (1) entering judgment for attempted first-degree murder because the indictment did not sufficiently allege attempted first-degree murder; (2) instructing the jury on attempted first-degree murder; (3) denying Defendant's motion to dismiss the indictment for assault on a female of Rickia Lee; (4) instructing the jury that it could convict Defendant of assault on a female for grabbing Rhonni Lyons by the hair; and (5) admitting certain Rule 404(b) evidence. After careful review, we discern no prejudicial error in part and no plain error in part.

## I. Factual & Procedural Background

Following an incident that occurred in the early morning hours of 10 July 2021, a Wake County grand jury indicted Defendant for several offenses, including: AWDWIKISI against Lee; possession of a firearm by a felon; assault on a female against Lee; and unlawfully, willfully, and feloniously attempting to kill Lee. The trial court joined the offenses, and Defendant's case proceeded to trial on 27 February 2023. The evidence tended to show the following.

In late 2020, Defendant and Rickia Lee began a non-exclusive, sexual relationship. In early 2021, Lee "cut things off" with Defendant when he was incarcerated, but the two "talked [on the phone] a couple times" during Defendant's incarceration. On 9 July 2021, Defendant was released from custody and went to a bar with friends where he consumed alcohol. After leaving the bar, Defendant traveled to a club in Durham, North Carolina, where he encountered Lee and her two friends, Rhonni Lyons and Amber Thompson. At approximately 2:30 a.m., Lee,

Lyons, and Thompson left the club in Lyons' car and drove to a nearby gas station to meet Defendant and his friend, Willie Hayes. Defendant and Hayes got into Lyons' car, and the group traveled to Lee's apartment.

At the time, Lee was living at an apartment complex located on Glenwood Avenue in Raleigh, North Carolina. The individual apartments are located within a "closed-in building," meaning Lee accessed her apartment through an interior hallway rather than directly from the outside. Lee's apartment was a two-bedroom corner apartment on the fourth floor beside an exit door. Lee lived in the apartment with her one-year-old son, who was not home at the time of these events.

The group arrived at Lee's apartment at approximately 3:30 a.m. At first, the group was together in the living room "drinking, taking shots . . . smoking weed . . . chilling . . . playing music, just like cooling in the house, really." As the night progressed, the group separated into different areas of Lee's apartment. Later on, Defendant and Lee were alone together in Lee's bedroom while Lee packed for an upcoming trip. As she packed, Lee made several trips in and out of her bedroom. When Lee returned to the living room, Defendant followed and started spontaneously punching Lee. Thompson "jumped in and tried to [] grab [Defendant] off of [Lee]" and screamed "[g]et off my friend." In response to the attack, Lee punched Defendant, pushed him away, and exited her apartment. Lee initially fled down the interior hallway, but returned to her apartment because she was barefoot and did not have any of her personal belongings.

When Lee re-entered her apartment, she observed Defendant punching Lyons, so Lee fled the apartment again. Defendant chased Lee into the hallway then dragged her by her hair to the stairwell entrance. Defendant then kicked Lee down the stairwell. Lee got up and "ran through an exit door [and] out of the front of the building." Without breaking stride, Lee glanced back to see if Defendant was still chasing her. Lee observed Defendant pointing a gun in her direction and heard Defendant say that he was going to kill her. A moment later, Lee heard "like, six shots go off," felt something hit her, and fell to the ground. Lee got up, continued running, and climbed over a neighbor's first-floor balcony. She pounded on the balcony door and yelled out for the someone to call 9-1-1. Lee saw blood on her but was not sure where it was coming from. The occupants of the apartment called 9-1-1 and informed Lee that she had been shot in the back of both of her legs.

Lee remained on the balcony while she waited for officers to arrive. Upon arrival, officers informed Lee that she needed to be transported to the hospital. As officers escorted Lee to an ambulance, Lee saw Defendant exiting the back of the apartment building and ducked behind some bushes. When officers asked Lee, "[w]hat are you running for?" she responded, "[t]hat's him. That's who just shot me." Officers detained Defendant. Defendant told officers that he did not know what was going on and claimed he had only just arrived at the apartment complex to meet Lee after leaving a nightclub.

At the scene, officers located Sellier and Bellot ("S&B") 10mm shell casings in

the stairwell. Officers also observed blood and several bullet holes in the stairwell. Months later, a landscaper discovered a 10mm pistol with a 15-round magazine in a bush at Lee's apartment complex. Officer Kenny Resaul, formerly with the Raleigh Police Department, testified that a 10mm round is "not a very common round" and that a 9mm round "is by far the most common," followed by .40 caliber, .45 caliber, and .22 caliber. Dinnah Angel Moses, a firearm examiner admitted as an expert in firearms and ballistics, testified that the S&B 10mm shell casings collected from the scene matched the 10mm pistol found by the landscaper.

During a pretrial Rule 404(b) hearing, Detective M.D. Larsen with the Raleigh Police Department, testified regarding Defendant's alleged involvement in a 2020 shooting at a Denny's in Raleigh. Detective Larsen explained that on 6 July 2020, at approximately 4:26 a.m., he received a call about shots being fired at Denny's. Upon arrival, Detective Larsen observed multiple shell casings in different groupings outside of the restaurant. Larsen saw .40 caliber rounds by the front door, a mixture of .40 caliber and 10mm rounds on the staircase where the building meets the parking lot, a mixture of .40 caliber rounds and 10mm rounds on the stairwell towards the road, and rifle rounds on the road. In total, officers recovered more than forty shell casings from the scene. At the close of the hearing, the trial court allowed the evidence of Defendant's participation in the Denny's shooting for the limited purpose of establishing identity.

At trial, Detective Larsen testified that when he arrived at the Denny's on 9

July 2020, he observed "basically four different areas where the [shell] casings were . . . ." The areas included: on the road, on the sidewalk below a stairwell connecting the road to the Denny's parking lot, at the top of the stairwell in the Denny's parking lot, and right outside the front door of the Denny's. Detective Larson identified Defendant from a Denny's surveillance video and testified that Defendant appeared to be holding "a firearm with some type of extended magazine."

On 7 March 2023, the jury found Defendant guilty on all counts. The trial court sentenced Defendant to: 258 months minimum and 322 months maximum in the custody of the Department of Adult Correction for attempted murder; 77 months minimum and 105 months maximum in the custody of the Department of Adult Correction for AWDWIKISI; 21 months minimum and 38 months maximum in the custody of the Department of Adult Correction for possession of a firearm by a felon; and 150 days in the custody of the Department of Adult Correction for assault on a female. The trial court ordered the sentences to run consecutively. Defendant gave oral notice of appeal in open court.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2023).

## III. Issues

The issues are whether: (1) the indictment sufficiently alleged attempted first-degree murder; (2) the trial court plainly erred by instructing the jury on attempted

- 6 -

first-degree murder; (3) the trial court erred by denying Defendant's motion to dismiss the indictment for assault on a female; (4) the trial court plainly erred by instructing the jury that it could convict Defendant of assault on a female for grabbing Lyons by the hair; and (5) the trial court plainly erred by admitting the 404(b) evidence.

## IV. Analysis

### A. Attempted Murder Indictment

First, Defendant asserts the trial court erred by entering judgment for attempted first-degree murder because the indictment was statutorily and constitutionally defective. Specifically, Defendant argues the indictment was defective because it failed to allege malice aforethought or any facts from which malice could be inferred. Although we agree with Defendant that the indictment was statutorily defective for failing to allege an essential element of attempted first-degree murder, Defendant was not prejudiced by this non-jurisdictional defect. Accordingly, we discern no prejudicial error.

### 1. Preservation & Standard of Review

"[I]ssues related to alleged indictment defects, jurisdictional or otherwise, remain automatically preserved despite a defendant's failure to object to the indictment at trial." *State v. Singleton*, 386 N.C. 183, 210, 900 S.E.2d 802, 821 (2024). We review the sufficiency of an indictment de novo. *State v. Davis*, 287 N.C. App. 456, 461, 883 S.E.2d 98, 103 (2023). "'Under a *de novo* review, [this Court] considers

the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

### 2. Indictments Generally

"An indictment is a formal accusation against a defendant which serves to charge him with committing a criminal offense." *State v. Horton*, 294 N.C. App. 614, 616, 903 S.E.2d 870, 873 (2024) (citing *State v. Abbott*, 217 N.C. App. 614, 617, 720 S.E.2d 437, 439 (2011)). While an "indictment need not conform to any technical rules of pleading . . . [it] must satisfy both the statutory strictures of [N.C. Gen. Stat.] § 15A-924 and the constitutional purposes which indictments are designed to satisfy . . . ." *State v. Oldroyd*, 380 N.C. 613, 617, 869 S.E.2d 193, 196 (2022) (internal quotation marks and citations omitted); *see* N.C. Gen. Stat. § 15A-924 (2023). "The purpose of an indictment is to 'identify clearly the crime being charged, thereby putting the [defendant] on reasonable notice to defend against it and prepare for trial, and to protect the [defendant] from being jeopardized by the State more than once for the same crime." *Horton*, 294 N.C. App. at 616, 617 S.E.2d at 873 (alterations in original) (quoting *State v. White*, 372 N.C. 248, 250, 827 S.E.2d 80, 82 (2019)). Under section 15A-924, a criminal indictment must include:

> A plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the

> defendant's commission thereof with sufficient precision clearly to apprise the defendant [] of the conduct which is the subject of the accusation.

N.C. Gen. Stat. § 15A-924(a)(5).

If a defendant has any doubt as to the factual basis for an offense included in an indictment, he may move for a bill of particulars and request "factual information . . . pertain[ing] to the charge [that is] not recited in the pleading." *State v. Garcia*, 358 N.C. 382, 389, 597 S.E.2d 724, 732 (2004) (cleaned up); *see* N.C. Gen. Stat. § 15A-925 (2023); *State v. Wadford*, 194 N.C. 336, 336, 139 S.E. 608, 609 (1927) (explaining a bill of particulars may cure indictment ambiguity). Although a bill of particulars "is not a part of the indictment, nor a substitute therefor, nor an amendment thereto," it enables the defendant to properly prepare his defense. *Wadford*, 194 N.C. at 336, 139 S.E. at 609.

### 3. Indictment Sufficiency

An indictment charging a defendant with murder or attempted murder is sufficient if it alleges "that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder [victim] . . . ." N.C. Gen. Stat. § 15-144 (2023); *see State v. Tart*, 372 N.C. 73, 76, 824 S.E.2d 837, 839 (2019) (explaining that section 15-144 "sets out the appropriate phrasing which can be utilized in indictments for the criminal offenses of murder . . . ."). Murder is defined as the " 'killing of a human being with malice aforethought . . . .' " *Tart*, 372 N.C. at 78–79, 824 S.E.2d at 841 (quoting Black's Law Dictionary 19th ed. 2014). Typically, indictments lacking the

essential element of malice aforethought are insufficient to allege murder or attempted murder as "the legal element [of] 'malice aforethought' . . . substantively and constitutionally distinguishes [murder] from an alleged manslaughter offense . . . ." *See id.* at 79, 824 S.E.2d at 841.

In *Singleton*, the North Carolina Supreme Court clarified that indictment defects fall into two distinct categories: jurisdictional and non-jurisdictional. 386 N.C. at 209, 900 S.E.2d at 820. Jurisdictional defects are exceedingly rare and only arise "where [the indictment] wholly fails to allege a crime against the laws or people of this State." *Id.* at 215, 900 S.E.2d at 824. If an indictment contains a jurisdictional defect, "[c]ourts lack the ability to act." *Id.* at 184, 900 S.E.2d at 805. For example, the trial court lacks jurisdiction if the indictment charges a defendant with "wearing a pink shirt on a Wednesday—conduct that [is not] a criminal offense . . . ." *Id.* at 205, 900 S.E.2d at 818. Conversely, a mere "pleading deficiency" is a non-jurisdictional defect, *id.* at 215, 900 S.E.2d at 824, and the indictment "will not be quashed or cast aside by reason of any informality when [it] express[es] the crime charged in a plain, intelligible, and explicit manner such that the defendant has notice sufficient to prepare a defense and to protect against double jeopardy[,]" *id.* at 185, 900 S.E.2d at 805 (internal quotation marks and citation omitted).

In *State v. Stewart*, released the same day as *Singleton*, the North Carolina Supreme Court applied the indictment rules clarified in *Singleton* and concluded the indictment at issue was facially valid because it "sufficiently alleged facts to place

[the] defendant on notice of the charge against him." 386 N.C. 237, 242, 900 S.E.2d 652, 656 (2024). In *Stewart*, the defendant argued the indictment charging him with sexual battery was fatally defective "because it failed to expressly allege that [he] engaged in sexual contact with another person 'by force.'" *Id.* at 237, 900 S.E.2d at 653. Although the indictment did not specify that the defendant acted "by force," instead alleging the defendant engaged in sexual contact with the victim "without her consent," the North Carolina Supreme Court determined the "element of force [was] inferable from the language of the indictment . . . ." *Id.* at 242, 900 S.E.2d at 656.

In other words, although the indictment contained a non-jurisdictional defect, it remained valid because it "stat[ed] the charge against defendant in a plain intelligible, and explicit manner, citing the statute under which defendant was charged." *Id.* at 242, 900 S.E.2d at 656. Ultimately, the indictment fulfilled its purpose of providing the defendant with notice of the charges against him and protecting him from double jeopardy. *Id.* at 242, 900 S.E.2d at 656. In reaching its conclusion, the North Carolina Supreme Court explained that the defendant's argument, "represents a regression to the era of technical pleading rules from which this State's jurisprudence has long since departed. As this Court has written time and time again, such rules tend to emphasize form over substance, undermining justice." *Id.* at 242, 900 S.E.2d at 656.

### 4. **Discussion**

In the instant case, Defendant argues the trial court should not have entered judgment for attempted first-degree murder because the indictment was statutorily and constitutionally defective. Relying on two pre-*Singleton* cases, *State v. Bullock* 154 N.C. App. 234, 574 S.E.2d 17 (2002), and *Tart*, 372 N.C. 73, 824 S.E.2d 837 (2019), Defendant requests this Court arrest judgment for attempted first-degree murder and remand for entry of judgment on attempted voluntary manslaughter. In doing so, Defendant contends that "[n]othing about the North Carolina Supreme Court's recent opinion in *Singleton* changes this required remedy . . . ." Contrary to Defendant's assertion, *Singleton* and *Stewart* are directly applicable to Defendant's challenge.

In *Bullock*, this Court held that an indictment stating the defendant "unlawfully, willfully and feloniously did attempt to kill and murder [victim]" was insufficient to allege attempted first-degree murder because the indictment did not explicitly state the essential element of malice aforethought. 154 N.C. App. at 244–45, 574 S.E.2d at 23–24. Even though "murder" appeared in the indictment, which implied malice aforethought, we concluded the trial court lacked jurisdiction. *Id.* at 244–45, 574 S.E.2d at 23–24. In *Tart*, we held that the indictment was sufficient because it alleged malice aforethought, despite deviating from the language "kill and murder" provided by section 15-144. 372 N.C. at 77, 824 S.E.2d at 840 (quoting N.C. Gen. Stat. § 15-144 (2017)). We emphasized that the "critical and dispositive difference between short-form indictments for murder offenses and manslaughter

offenses is the substantive allegation of the element of 'malice aforethought' . . . ." *Id.* at 78, 824 S.E.2d at 841.

Defendant is correct that *Singleton* and *Stewart* did not disrupt the well-established rule that indictments must be drafted "in a manner that 'satisf[ies] both statutory strictures and . . . constitutional purposes.'" *Singleton*, 396 N.C. at 210, 900 S.E.2d at 820 (alterations in original) (quoting *State v. Lancaster*, 385 N.C. 459, 462, 895 S.E.2d 337, 340 (2023)); *see Stewart*, 386 N.C. at 240, 900 S.E.2d at 655. Indeed, an indictment "fail[s] to satisfy constitutional purposes," *Singleton*, 396 N.C. at 210, 900 S.E.2d at 821, if it does not provide " 'notice sufficient to prepare a defense' " or fails to " 'protect against double jeopardy,' " *id.* at 210, 900 S.E.2d at 821 (quoting *Lancaster*, 385 N.C. at 462, 895 S.E.2d at 340). Similarly, an indictment "might fail to satisfy relevant statutory strictures" if it does not " 'assert[] facts supporting every element of a criminal offense.' " *Id.* at 210, 900 S.E.2d at 821 (alteration in original) (quoting N.C. Gen. Stat. § 15A-924(a)(5) (2023)).

Although *Singleton* and *Stewart* did not alter these rules, they clarified that not all indictment defects are created equal. Instead, non-jurisdictional defects which cause the indictment to fail in it its essential purpose may render the indictment invalid. *Singleton*, 386 N.C. at 215, 900 S.E.2d at 824. Where a defendant demonstrates a non-jurisdictional defect of this magnitude, he must overcome the additional hurdle of showing that the non-jurisdictional defect was prejudicial. *Id.* at 210, 900 S.E.2d at 821.

- 13 -

> In determining whether an [indictment] error was prejudicial, the prejudicial error tests provided in section 15A-1443 are applicable. Subsection 15A-1443(a) is the appropriate test for indictment errors that fail to satisfy statutory strictures, and subsection 15A-1443(b) is the appropriate test for indictment errors that fail to satisfy the constitutional purposes of indictments. However, it would appear that the longer a defendant waits to raise issues related to deficient criminal pleadings, the more difficult it would be to establish prejudice.

*Id.* at 211, 900 S.E.2d at 821 (cleaned up).

Here, the indictment purporting to charge Defendant with attempted first-degree murder states:

> The jurors for the State upon their oath presented that on or about July 10, 2021, in Wake County, the defendant named above unlawfully, willfully, and feloniously did attempt to kill Rikia Lee. The defendant's actions were in violation of N.C. [Gen. Stat. §] 14-17.

The indictment contains a defect in that it omits an essential element of the crime of attempted first-degree murder—malice aforethought. Nevertheless, because the indictment alleges a crime against the laws of North Carolina, the defect is non-jurisdictional. *See id.* at 210, 900 S.E.2d at 821; *Tart,* 372 N.C. at 79, 824 S.E.2d at 841. Having established the indictment defect is non-jurisdictional, we analyze the indictment's constitutional and statutory sufficiency in light of the defect. *See State v. Cornwell,* ___ N.C. App. ___, ___, 918 S.E.2d 903, 909 (2025).

Defendant has not shown that the indictment failed to satisfy constitutional purposes. *See Singleton,* 396 N.C. at 210, 900 S.E.2d at 821. It is clear from the

record and transcript that Defendant had notice of the charges against him. Defendant vigorously advocated against the attempted first-degree murder charge, including asserting the affirmative defenses of voluntary intoxication and diminished capacity. If successful, these defenses may have undermined the State's contention that Defendant possessed the specific intent to kill.[1] Additionally, defense counsel acknowledged the first-degree attempted murder charge during: his opening statement, Defendant's case-in-chief, the charge conference, his closing argument, and sentencing. Moreover, Defendant did not move for a bill of particulars, object to the indictment, or express confusion as to the charges against him. Thus, Defendant's argument that the indictment was constitutionally defective because it did not provide him with sufficient notice of the attempted first-degree murder charge and failed to protect him from double jeopardy is not supported by the record.

The indictment is, however, statutorily defective in that it fails to explicitly allege that Defendant acted with "malice aforethought" and does not otherwise include any facts from which malice could be inferred. *See* N.C. Gen. Stat. § 15-144. Although the indictment specifically stated Defendant's actions were in violation of section 14-17 of our General Statutes—the murder statute—the indictment omits an

---

[1] Attempted first-degree murder requires evidence that the defendant possessed the specific intent to kill. *State v. Coble*, 351 N.C. 448, 450, 527 S.E.2d 45, 47 (2000). Diminished capacity and voluntary intoxication are only available to negate the *mens rea* element of specific intent crimes. *See State v. Arnett*, 276 N.C. App. 106, 113, 856 S.E.2d 123, 127 (2021); *State v. Roache*, 358 N.C. 243, 284, 595 S.E.2d 381, 407 (2004). Although the specific intent to kill is an element of attempted voluntary manslaughter, Defendant did not produce any "heat of passion" or "provocation" evidence at trial, nor does he contend on appeal that this was a crime of passion.

essential element of the crime of attempted first-degree murder. *See id.* Without such language, the indictment does not "distinguish[] [the] charge from an alleged manslaughter offense." *See Tart*, 372 N.C. at 79, 824 S.E.2d at 841.

Notwithstanding the defect, Defendant has not carried his burden of establishing prejudice under section 15A-1443(a). *See Singleton*, 396 N.C. at 211, 900 S.E.2d at 821; N.C. Gen. Stat. § 15A-1443(a) (2023). To demonstrate prejudice, a defendant must show "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a). Considering the overwhelming evidence of Defendant's guilt—including Lee's identification of Defendant as the perpetrator at the scene, Lee's testimony that Defendant said he was going to kill Lee, and Defendant's conduct of attacking, chasing, and shooting Lee in the back of the legs—we cannot say that if the indictment properly alleged malice aforethought, the jury would not have convicted Defendant. *See Cornwell*, ___ N.C. App. at ___, 918 S.E.2d at 910 ("[The] defendant's burden is to establish a reasonable possibility that if the error had not been committed—i.e., if the indictment had properly alleged the underlying acts comprising the [continuing criminal enterprise charge]—the jury would not have convicted him of that charge."). Moreover, Defendant waited until the filing of this appeal to raise the issue. *See Singleton*, 386 N.C. at 211, 900 S.E.2d at 821. Accordingly, we conclude Defendant

has not established prejudice and is therefore not entitled to relief based on the non-jurisdictional indictment defect.

## B. Attempted Murder Jury Instructions

Next, Defendant argues the trial court plainly erred by instructing the jury on attempted first-degree murder because the indictment did not properly allege attempted first-degree murder. We disagree.

In a criminal case, "this Court may elect to review [certain] unpreserved issues for plain error, if specifically and distinctly contended to amount to plain error . . . ." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996) (explaining plain-error review is available for alleged errors "in the judge's instructions to the jury, or [] rulings on the admissibility of evidence"). Defendant concedes this issue is unpreserved and "specifically and distinctly" asserts the trial court plainly erred by instructing the jury on attempted first-degree murder. *See id.* at 584, 467 S.E.2d at 31. Accordingly, we review for plain error.

To establish plain error, a defendant must pass a three-part test:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (citations and quotation marks omitted).

Where an instructional challenge is preserved, "it is error, generally prejudicial, for the trial judge to permit a jury to convict upon a theory not supported by the bill of indictment." *State v. Brown*, 312 N.C. 237, 248, 321 S.E.2d 856, 863 (1984) (citing *State v. Taylor*, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980)). Nevertheless, by dispensing with strict common law pleading requirements for indictments in favor of a "common sense approach to the law," *Singleton*, 386 N.C. at 185, 900 S.E.2d at 805, our Supreme Court recently clarified that "technicalities should not carry the day for defendants who argue form over substance in our indictment jurisprudence, because defendants are seldom prejudiced by mistakes in pleadings," *see id.* at 214–15, 900 S.E.2d at 824; *see State v. Little*, 296 N.C. App. 424, 435–36, 909 S.E.2d 363, 371 (2024) (Carpenter J., concurring) (explaining the "thrust of *Singleton* and *Stewart* seems to be, indictment-related arguments which unduly elevate form over substance . . . will not stand provided the defendant was sufficiently noticed of charges to prepare a defense").

Defendant's argument concerning "instructional overreach based on the explicit inclusion or omission of indictment language" is a variation of the type of argument *Singleton* cautioned against. *See Little*, 296 N.C. App. at 436, 909 S.E.2d at 371 (Carpenter J., concurring) (explaining indictment-related arguments such as

the one presented in this case are "the flip side of the same coin"); *Singleton*, 386 N.C. at 184, 900 S.E.2d at 184.

Here, the indictment contained a non-jurisdictional defect. But, for the same reasons articulated above, Defendant cannot establish prejudice. *See Reber*, 386 N.C. at 158, 900 S.E.2d at 786; *State v. Hines*, 166 N.C. App. 202, 207, 600 S.E.2d 891, 896 (2004) (explaining a defendant is prejudiced by a variance between the indictment and the jury instruction if his ability to prepare a defense is "substantially affected"). Because the evidence of Defendant's guilt was overwhelming and his ability to prepare a defense was not "substantially affected," the trial court did not plainly err by instructing the jury on attempted first-degree murder. *See Hines*, 166 N.C. App. at 207, 600 S.E.2d at 896.

### C. Motion to Dismiss

Additionally, Defendant contends his motion to dismiss the indictment for assault on a female against Lee should have been granted because a fatal variance existed between the offense charged and the State's evidence. Specifically, Defendant asserts that the trial court erred because the indictment alleged he committed assault on a female by punching Lee, whereas the State's evidence, contrary to the indictment, focused on Defendant's conduct of pulling Lyons' hair. We disagree.

This Court reviews motions to dismiss and issues regarding fatal variances de novo. *State v. Juran*, 294 N.C. App. 81, 85, 901 S.E.2d 872, 877 (2024). "'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own

judgment' for that of the lower tribunal." *Williams*, 263 N.C. at 632–33, 669 S.E.2d at 294 (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. at 647, 576 S.E.2d at 319). In reviewing a motion to dismiss, we evaluate whether "in the light most favorable to the State, 'there was substantial evidence (1) of each essential element of the offense charged, and (2) that [the] defendant is the perpetrator of the offense.'" *Juran*, 294 N.C. at 85, 901 S.E.2d at 877 (alteration in original) (quoting *State v. Collins*, 283 N.C. App. 458, 465, 874 S.E.2d 210, 215 (2022)). " 'Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 85–86, 910 S.E.2d at 877 (quoting *State v. Turnage*, 362 N.C. 491, 493, 666 S.E.2d 753, 755 (2008)).

"When the State fails to offer sufficient evidence to establish the defendant committed the criminal offense charged, a motion to dismiss is in order." *Id.* at 86, 910 S.E.2d at 877. "For this reason, 'a variance between the criminal offense charged and the offense established by the evidence' also warrants a motion to dismiss as the variance 'is in essence a failure of the State to establish the offense charged.'" *Id.* at 86, 910 S.E.2d at 877 (quoting *State v. Barnett*, 368 N.C. 710, 713, 782 S.E.2d 885, 888 (2016)). "[T]o prevail on such a motion, the defendant must show there existed 'a fatal variance between the offense charged and the proof as to the gist of the offense.'" *Id.* at 86, 901 S.E.2d at 877 (quoting *Barnett*, 368 N.C. at 713, 782 S.E.2d at 888).

Here, the indictment alleged Defendant "unlawfully and willfully did assault

and strike [] Lee, a female person, by punching her in the face." Although the State presented evidence that Defendant grabbed Lyons by the hair, the State also presented substantial evidence that Defendant punched Lee in the face as alleged in the indictment—a point Defendant does not dispute. Indeed, Lee testified that while she was standing in the living room of her apartment, Defendant attacked her and hit her "upside [the] head." Thus, because the indictment named Lee as the victim and the State offered substantial evidence that Defendant struck Lee, Defendant's motion to dismiss was properly denied. *See id.* at 86, 910 S.E.2d at 877. Accordingly, the trial court did not err by denying Defendant's motion to dismiss.

**D. Assault on a Female Jury Instruction**

Defendant also asserts the trial court plainly erred by instructing the jury that it could convict Defendant of assault on a female for grabbing Lyons by the hair because the indictment only alleged assault on a female for punching Lee. Although we agree with Defendant that the trial court erred because the instruction did not align with the indictment, we conclude Defendant cannot establish prejudice. *See Reber*, 386 N.C. at 158, 900 S.E.2d at 786.

"We review a defendant's issue for plain error where, as here, the defendant failed to object to the jury instruction at trial on the basis of the existence of a fatal variance between the indictment and the instruction." *Juran*, 294 N.C. App. at 87, 901 S.E.2d at 878. Defendant concedes this issue is unpreserved and "specifically and distinctly" argues the trial court's instructions constituted plain error because

without the instructional error, the jury could not have found him guilty of the uncharged crime of assault on a female against Lyons. *See Gregory*, 342 N.C. at 584, 467 S.E.2d at 31.

Here, the trial court did not instruct the jury in accordance with the indictment. The indictment alleged Defendant committed assault on a female against Lee, but the trial court instructed the jury it could convict Defendant for assault on a female against Lyons. This was error, as conceded by the State. *See State v. Wilson*, 297 N.C. App. 535, 540, 910 S.E.2d 407, 411 (2024) (concluding "the trial court erred in instructing the jury as to a theory not alleged in the indictment").

To establish prejudice under *Reber*, a defendant "must show that absent the error [in question], the jury probably would have returned a different verdict." 386 N.C. at 158, 900 S.E.2d at 786. The jury heard evidence that Defendant committed an assault on both victims, Lee and Lyons. Lee testified that Defendant pulled her by her hair, punched her, beat her, and kicked her down her apartment stairwell. Thus, had the trial court instructed the jury on assault on a female against Lee—as alleged in the indictment—the outcome of Defendant's trial would have been the same. Lee also testified that when she returned to her apartment after initially fleeing, she observed Defendant "fighting" and "punching" Lyons. Additionally, Hayes testified that approximately five minutes before the police arrived, he observed Defendant "grab [Lyons] by the hair." Thus, we cannot say it is "almost certain" that absent the erroneous instruction, Defendant would not have been convicted for

assault on a female as the evidence tended to show Defendant assaulted both Lee and Lyons. *See id.* at 159, 900 S.E.2d at 787 (explaining "probably would have reached a different result" means a different outcome was "almost certain[]") (emphasis omitted). Therefore, Defendant cannot establish prejudice under *Reber*. *See id.* at 386 N.C. at 158, 900 S.E.2d at 786. Accordingly, we discern no plain error in the trial court's instructions.

### E. Rule 404(b)

Finally, Defendant argues the trial court plainly erred by admitting evidence of his involvement in the Denny's shooting for the purpose of establishing identity. Defendant concedes this issue is unpreserved. Because Defendant "specifically and distinctly" argues the admission of the 404(b) evidence constituted plain error, we review for plain error. *See Gregory*, 342 N.C. at 584, 467 S.E.2d at 31 (explaining unpreserved evidentiary challenges may be reviewed for plain error).

"Evidence of other crimes, wrongs, or acts . . . may [] be admissible for other purposes, such as proof of . . . identity . . . ." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2023). " '[B]efore evidence of other distinct crimes may be admitted under the [identity] exception, two requirements must be met. First, the identity of the defendant must be an issue in the case.' " *State v. Mack*, 277 N.C. App. 505, 513, 860 S.E.2d 271, 277 (2021) (alterations in original) (quoting *State v. Thomas*, 310 N.C. 369, 373, 312 S.E.2d 458, 460–61 (1984)). Second, "the circumstances of the two crimes [must] be such as to tend to show that the crime charged and another offense

were committed by the same person." *Thomas*, 310 N.C. at 373, 312 S.E.2d at 460–61. The identity of a perpetrator of a criminal offense is always a "material fact." *Mack*, 277 N.C. App. at 513–14, 869 S.E.2d at 277 (quoting *State v. Jeter*, 326 N.C. 457, 458, 389 S.E.2d 805, 806 (1990)). But " 'identity is not always an issue.' " *See id*. at 513–14, 869 S.E.2d at 277 (quoting *State v. White*, 101 N.C. App. 593, 600, 401 S.E.2d 106, 110 (1991)).

Indeed, identity evidence under Rule 404(b) should generally not be admitted "unless the defendant presents alibi evidence . . . ." *State v. Williams*, 82 N.C. App. 281, 284, 346 S.E.2d 315, 316 (1986).

Here, the State introduced evidence of Defendant's alleged involvement in the Denny's shooting for the permissible purpose of establishing identity. Even assuming the evidence was improperly admitted, Defendant has not established prejudice. The evidence of Defendant's guilt—including Lee's identification of Defendant as her assailant at the scene and her testimony recounting Defendant's attack—was overwhelming. Therefore, we cannot say that absent the 404(b) evidence, the jury "almost certainly" would have reached a different outcome. *See Reber*, 386 N.C. at 159, 900 S.E.2d 787. Accordingly, we discern no plain error.

## V. Conclusion

Defendant was not prejudiced by the non-jurisdictional indictment defect. The trial court did not plainly err by instructing the jury on attempted murder or assault on a female. The trial court did not err by denying Defendant's motion to dismiss.

Finally, the trial court did not err by admitting the 404(b) evidence.

NO PREJUDICIAL ERROR IN PART; NO PLAIN ERROR IN PART.

Judges STROUD and GRIFFIN concur.

Report per Rule 30(e).